**ROSE et al., Appellants,**

v.

**WOMEN'S HEALTH CLINIC et al., Appellees.**

[Cite as *Rose v. Women's Health Clinic* (1993), 90 Ohio App.3d 776.]

Court of Appeals of Ohio,
Ashtabula County.

No. 93–A–1766.

Decided Oct. 1, 1993.

*Patrick D. Quinn,* for appellants.

*Daniel S. Cody* and *Anthony P. Dapore,* for appellees.

JOSEPH E. MAHONEY, Judge.

Appellees, Dr. S.W. Kim, Dr. C.K. Woo and the Women's Health Clinic, in Ashtabula, Ohio, provided gynecological and obstetric services for appellant, Carla Rose, from December 1980 through January 1987. (Hereinafter, whenever this court refers to appellant, it is referring to Carla Rose, individually, and not her husband, Richard Rose, who is also an appellant.) During this time period, appellees monitored appellant's pregnancies, delivered her three children, and tended to her gynecological care. This included two pap smears performed on May 14, 1985 and May 23, 1986 and several internal examinations. Appellant alleges that she was never informed as to the results of the tests and assumed that the results were "normal."

On November 24, 1989, appellant was taken to the emergency room at University Hospitals of Cleveland with a chief complaint of heavy vaginal bleeding. After an examination, appellant was advised that it appeared that she had cervical cancer.

On November 27, 1989, appellant met with Dr. Michael MacFee, a specialist in gynecology and oncology. A cervical biopsy was performed at that meeting. A second biopsy was performed on December 4, 1989. On December 7, 1989, appellant was informed by Dr. MacFee that she did, in fact, have cervical cancer.

On December 12, 1989, appellant began radiation treatments which continued until January 30, 1990. On February 2, 1990, appellant underwent a cervical implant which was followed in April 1990 by a complete hysterectomy.

After the radiation treatments ended in January 1990, appellant and her husband began to question the cause of her cancer. At that time, it occurred to appellant that perhaps her previous medical care was suspect. On February 7, 1990, appellant consulted with attorney William Kobelak regarding a possible malpractice claim.

On December 20, 1990, appellant's counsel sent 180–day notice letters to appellees pursuant to R.C. 2305.11(B).

On June 17, 1991, Carla Rose and her husband, Richard Rose, filed an action claiming medical malpractice in Ashtabula County Common Pleas Court. Following discovery, appellees filed a motion for summary judgment on August 31, 1992. On December 29, 1992, the trial court granted appellees' motion for summary judgment after determining that the complaint was not timely filed.

Appellants timely filed a notice of appeal with one assignment of error.

In the sole assignment of error, appellants contend that the trial court erred in granting summary judgment in favor of appellees. The determinative issue in

this case is whether appellant's 180–day notice letters were timely sent to appellees.

Former R.C. 2305.11(B)(1), as in effect at the time the relevant events occurred in the present case, provided in pertinent part:

"[A]n action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the action accrued, except that, if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given." ·

At dispute is the accrual date of appellant's cause of action.

In Ohio, a cause of action for medical malpractice accrues when the patient discovers, or should have discovered in the exercise of reasonable care and diligence, the resulting injury. *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438; *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 589 N.E.2d 1284. In *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, the Ohio Supreme Court set forth a three-pronged test to determine when a medical malpractice cause of action accrues. The court held:

"[T]he trial court must look to the facts of the particular case and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition. * * * " (Citations omitted.) *Id.* at paragraph one of the syllabus.

Subsequently, in *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 538 N.E.2d 93, the Supreme Court combined the three prongs of the *Hershberger* test and held that the "extent and seriousness of his condition" language of the test requires that there be "an occurrence of a 'cognizable event' which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies." *Id.*, 42 Ohio St.3d at 133, 538 N.E.2d at 96.

Additionally, the court stated that the patient need not be aware of the full extent of the injury before there is a cognizable event. It is enough that some

noteworthy event occurs which does or should alert a reasonable person that an improper medical procedure, treatment or diagnosis has taken place.

More recently, in *Flowers, supra,* the Ohio Supreme Court held that "*constructive* knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." (Emphasis *sic.*) *Id.,* 63 Ohio St.3d at 549, 589 N.E.2d at 1287. The court also stated:

"The occurrence of a 'cognizable event' imposes upon the plaintiff the duty to (1) determine whether the injury suffered is the proximate result of malpractice and (2) ascertain the identity of the tortfeasor or tortfeasors." *Id.* at 549–550, 589 N.E.2d at 1288.

 In the case *sub judice,* it is undisputed that appellant received treatment from appellees from December 1980 through January 1987. It is further undisputed that said treatment included two pap smears. Appellant indicated that she was never notified as to the results of the pap smears. Subsequently, on December 7, 1989, it is evident that appellant was diagnosed and advised by Dr. MacFee that she had cervical cancer.

Moreover, from appellant's deposition, it is apparent that she suspected that malpractice had been committed by her previous doctors as of December 7, 1989 when Dr. MacFee advised her of her condition. The pertinent portions of her deposition indicate the following exchange:

"Q When Dr. MacFee told you about the cancer of the cervix, were you surprised, or did you already know that you probably had cancer, based on what the emergency room doctor had said?

"A Well, I was hurt more than anything, you know.

"Q I am sorry?

"A Not so much surprised, I was hurt because I trusted in doctors, and they didn't find it, you know, because at that time they had told me that it was a second stage cancer.

"Q So you had placed your trust in doctors, and you felt like they had let you down?

"A Yes, they did.

"Q Did you talk with Dr. MacFee about your feelings that the other doctors had let you down, in December, when he was talking with you about your diagnosis?

"A I don't recall, but I may have. I was quite upset at the time.

"Q But after you learned the diagnosis, that that was the diagnosis, you felt your other doctors had done something wrong and had let you down; is that a fair statement?

"A Yes, I had put my trust in them, and yes, they did let me—I feel they let me down."

It is clear that the "cognizable event" occurred on December 7, 1989, when appellant first learned that she had cancer. It was at that point that appellant had, or should have had, reason to believe that the treatment or diagnosis previously rendered by appellees was incorrect. Actual knowledge of the cancer placed appellant on notice that she had a physical condition which constituted an injury. It was then incumbent upon her to begin her investigation to determine whether the injury may have been the proximate result of malpractice and, if so, the identification of the tortfeasors.

Appellant's argument is that the "cognizable event" did not occur until after her radiation treatments ended in late January 1990, at which point she began to question for the first time the cause of her cancer. This is simply not supported by the law. As the trial court correctly pointed out, the standard asserted by appellant is a subjective standard, whereas the standard set forth by the Ohio Supreme Court is an objective standard. A subjective standard could extend the statute of limitations indefinitely which would unfairly prejudice the rights of the defendant. As the court explained in *Flowers, supra,* plaintiffs and defendants in malpractice actions should be on the same footing as plaintiffs and defendants in other tort litigation.

It is evident that no "cognizable event" occurred in late January 1990; merely a period of time elapsed during which appellant began to question the cause of her condition. Appellant gained no additional knowledge between December 7, 1989 and the end of January 1990.

For the foregoing reasons, the trial court properly determined that the statute of limitations began to run on December 7, 1989 and, thus, that appellants' complaint was not timely filed.

Accordingly, the decision of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and EDWARD J. MAHONEY, J., concur.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.