Appellants appeal the trial court's decision granting summary judgment in favor of appellees on the grounds that appellants' action was not timely filed. Since the record reveals that an issue of material fact remains regarding the date on which the "cognizable event" occurred, we reverse.
On June 30, 1995, appellant James Hegedus proceeded to the emergency room at appellee Bedford Community Hospital for treatment following an injury that he suffered to his wrist. Appellant returned to the emergency room for additional evaluation and treatment on July 2 and 3, 1995. Appellant was treated on these dates by appellees L. Horwitz, M.D and S. Martin M.D. Appellant was not informed that he may have suffered a fractured wrist.
Appellant continued to suffer pain and swelling over the next few months. On November 20, 1995, he returned to Bedford Community Hospital to seek further treatment. At that time, appellant was referred to Robert C. Muehrcke, M.D., an orthopaedic surgeon. Appellant first saw Dr. Muehrcke on December 14, 1995. At the first appointment, Dr. Muehrcke performed an X-ray of appellant's wrist. According to appellant's affidavit, Dr. Muehrcke was unable to ascertain the source of appellant's pain from the X-ray and instructed appellant to obtain an MRI. Dr. Muehrcke's patient notes indicated that the X-ray revealed either an "old fracture" or a "scaphoid cyst"; it is unclear from these notes whether appellant was informed of these possible diagnoses at that time. Pursuant to Dr. Muehrcke's advice, appellant underwent an MRI on December 23, 1995.
Appellant returned to Dr. Muehrcke on January 4, 1996. Appellant's affidavit stated that at this consultation, Dr. Muehrcke explained the results of the MRI to him and informed him that he might have either a cyst or an "old fracture." Appellant underwent surgery on January 15, 1996. Following the surgery, appellant learned that he had, indeed, previously suffered a fracture of his wrist. Appellant has since made good progress.
On May 29, 1996, appellant's attorney sent a letter to L. Horwitz, M.D. pursuant to R.C. 2305.11. The letter notified Dr. Horwitz that the quality of medical care rendered to appellant was under investigation and that the letter was to serve as notice "as an extension of the statute of limitations with respect to those professional services for an additional 180 days."
Appellants[1] filed an action alleging medical malpractice on January 3, 1997 against appellees Bedford Community Hospital, S. Martin M.D., L. Horwitz, M.D. and Emergency Medical Resources (hereinafter "appellees").[2] Appellees S. Martin, M.D., L. Horwitz, M.D. and Emergency Medical Resources filed a motion for summary judgment on March 19, 1997, and appellee Bedford Medical Center filed a motion for summary judgment on April 14, 1997. The basis for the motions was that appellants' action was barred pursuant to the one-year statute of limitations for medical malpractice claims established by R.C. 2305.11(B)(1).
The trial court granted the motions for summary judgment on April 23, 1997 and May 22, 1997, respectively. Appellants appealed from the trial court's decision granting summary judgment to appellees.
Appellants' sole assignment of error contends:
 WHERE THE RECORD IS VOID OF ANY EVIDENCE THAT APPELLANT HAD ANY EARLIER KNOWLEDGE, A COGNIZABLE EVENT OCCURS WHEN APPELLANT IS INFORMED BY HIS PHYSICIAN THAT A MISDIAGNOSIS HAS BEEN MADE.
Before summary judgment can be granted, it must be determined that 1) no genuine issue as to any material fact remains to be litigated, 2) the moving party is entitled to judgment as a matter of law, and 3) it appears from the evidence that reasonable minds can come to but one conclusion and, viewing the evidence most strongly in favor of the non-moving party, that conclusion is adverse to that party. Welco Industries,Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 436, citingTemple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. Summary judgments should be awarded with caution; courts must be careful to resolve doubts and construe evidence in favor of the non-moving party. Welco, citing Murphy v. Reynoldsburg
(1992), 65 Ohio St.3d 356. A reviewing court will review a ruling on a motion for summary judgment de novo. Payton v.Rehberg (1997), 119 Ohio App.3d 183, 187 citing Brown v. SciotoBd. Of Commrs. (1993), 87 Ohio App.3d 704, 711.
R.C. 2305.11(B)(1) provides, in pertinent part:
 * * * [A]n action upon a medical * * * claim shall be commenced within one year after the action accrued, except that, if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical * * * claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given.
A "medical claim" is defined by R.C. 2305.11(D)(3) as:
 * * * any claim that is asserted in any civil action against a physician, podiatrist, or hospital, or against a registered nurse or physical therapist, and that arises out of the medical diagnosis, care or treatment of any person. "Medical claim" includes derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person.
Since the within matter involves a "medical claim," appellants were required to file their action within the one-year period provided.[3]
The Ohio Supreme Court noted that:
 * * * [A] cause of action for medical malpractice accrues and the R.C. 2305.11
limitations period begins to run either (1) when the patient discovers, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury, or (2) when the physician-patient relationship for the condition terminates, whichever occurs later. Oliver v. Kaiser Community Health Found. (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438, syllabus; Frysinger v. Leech (1987), 32 Ohio St.3d 38, 512 N.E.2d 337, paragraph one of the syllabus.
Akers v. Alonzo (1992), 65 Ohio St.3d 422, 424-425.
In Hershberger v. Akron City Hosp. (1987), 34 Ohio St.3d 1, paragraph one of the syllabus, the court established a three-prong test to assist in the determination of the accrual date when applying the statute of limitations under R.C.2305.11(B) (then R.C. 2305.11[A]).
 [T]he trial court must look to the facts of the particular case and make the following determinations: when the injured party became aware, or should have become aware of the extent and seriousness of his condition; whether the injured party was aware, or should have been aware, that such condition was related to a specific medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition. * * * (Citations omitted.)
Id. The court subsequently reviewed its holding in Hershberger
and stated:
 Admittedly, "extent and seriousness" are not terms of art and, therefore, do not lend themselves to easily discernible definitions. Since the three prongs of Hershberger overlap considerably, we believe that the best manner in which to explain "extent and seriousness of his condition" is to combine the three prongs. Thus, we now hold that the "extent and seriousness of his condition" language of the test set forth in Hershberger v. Akron City Hosp. (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, paragraph one of the syllabus, requires that there be an occurrence of a "cognizable event" which does or should lead the patient to believe that the condition of which the patient complains is related to the medical procedure, treatment, or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies.
 Moreover, we do not believe that a patient must be aware of the full extent of the injury before there is a cognizable event. * * *
Allenius v. Thomas (1989), 42 Ohio St.3d 131, 133.
Appellant argues that he did not suspect malpractice until he became aware of the results of the MRI on January 4, 1996 and that he did not know that malpractice had occurred until following his surgery on January 15, 1996. Thus, he argues the "cognizable event" could not have occurred before January 4, 1996 and the complaint was timely filed on January 3, 1997.
The issue of a patient learning of a previous misdiagnosis from a subsequent physician was addressed in Herr v. RobinsonMemorial Hosp. (1990), 49 Ohio St.3d 6. In Herr, the patient consulted with two different physicians in an attempt to alleviate his back pain. One of his physicians diagnosed the patient's problem as arising from a bad disc and eventually surgically removed a disc from appellant's back. The patient then sought the assistance of a third physician, who diagnosed appellant with a broken vertebra and opined that any procedure that dealt with a disc would have increased the instability of the patient's back. After this diagnosis was confirmed, the patient underwent surgery and eventually recovered fully.
The court in Herr applied the Allenius analysis and held that the "cognizable event" occurred when the third physician informed the patient that he had a broken vertebra. The court noted that the patient had been following the advice of his earlier physicians and relied on their assurances and therefore concluded that "pain alone cannot be the cognizable event."Herr at 9. However, the court cautioned that this holding was based upon the particular facts of the case and that its decision should not be interpreted to mean that pain alone may never be a cognizable event. Id.
The cases which evaluate the occurrence of a "cognizable event" when subsequent medical treatment is sought are necessarily fact specific. For example, this court reached a different result from the Herr court in Baliko v. Kuschnir
(July 25, 1996), Cuyahoga App. No. 69771, unreported, 1996 WL 417155. In Baliko, the patient suffered an injury to his shoulder. He consulted a physician, who recommended that the patient undergo surgery to repair the acromioclavicular ("AC") joint. The patient had the surgery and later had a second surgery to remove a device that had been inserted to repair the joint. The next month, the patient consulted with a different physician, who examined the patient and took X-rays. The patient returned to the second physician seven months later and discussed the possibility of surgery; he eventually underwent another operation.
The patient filed suit against the first physician, who moved for summary judgment on the grounds that the patient had become aware of the possible malpractice after the patient's first consultation with the second physician. The court noted that the patient requested the second opinion because he suspected that he had received inadequate treatment and sought to confirm or disprove his suspicion.[4] However, importantly, the court also noted that after the initial consultation with the second doctor, the patient "subjectively understood [the first physician's] treatment of him had failed because the AC joint was still separated."[5] Id. (Citations omitted, emphasis in original.)
In the matter sub judice, appellant sought additional treatment in December 1995 after the pain in his wrist continued following the treatment he had received in July 1995. Appellant stated, via affidavit attached to his motion for summary judgment, that Dr. Muehrcke, after his first appointment, was unable to determine the cause of appellant's pain and instructed appellant to obtain an MRI. Appellant further stated that he learned for the first time on January 4, 1996 that the MRI revealed that he might possibly have an "old fracture" or a cyst.
The determination of the occurrence of a "cognizable event" is subject to an objective standard. Rose v. Women's HealthClinic (1993), 90 Ohio App.3d 776, 780. However, in the mattersub judice, there is no evidence to demonstrate that appellant knew or should have known, following his first consultation with Dr. Muehrcke, that his injury may have been previously misdiagnosed. It is undisputed that appellant sought additional medical treatment because he continued to have pain. However, distinguishable from the scenario in Baliko, there is no evidence in the record to indicate that, following the December 14, 1995 appointment, appellant had reason to attribute his continuing discomfort to a misdiagnosis by appellees.
There is no dispute that appellant sought additional medical attention because he continued to suffer pain in his wrist; however, there is no evidence to indicate that appellant had any reason to believe that his continued pain was caused by an earlier fracture that had not been diagnosed and was not just residual pain from a slow-to-heal injury. "[T]he causes of medical problems and the effects of prescribed treatments are not within the realm of a layman's knowledge." Herr at 9.
This court believes, following a de novo review of the record, that an issue of material fact exists regarding the date on which appellant actually initially became aware or should have become aware that his wrist injury had been previously misdiagnosed. Appellant stated in his affidavit that he was not informed that he may have suffered an earlier wrist fracture until January 4, 1996. Construing the evidence most strongly in appellants' favor, the trial court improperly granted summary judgment against appellants.
Appellants' assignment of error is well-taken. This matter is remanded to the trial court for further proceedings consistent with this opinion.
This cause is remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellees their costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, P.J. and MICHAEL J. CORRIGAN, J. CONCUR
 _______________________________ JUDGE KENNETH A. ROCCO
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 27. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] Appellant's wife also joined in the action alleging loss of consortium.
[2] Appellee Emergency Medical Resources was referred to incorrectly in the case caption as "Bedford Medical Resources."
[3] Although appellant did send a "180 day letter" as provided by R.C. 2305.11(B)(1), appellant failed to file the action within 180 days following the letter. Therefore, the 180-day extension of time does not apply.
[4] During his deposition, the patient stated that he contacted the second physician because "[he] just didn't feel like [his shoulder] was right."
[5] The patient also stated that, in regard to his initial visit with the second physician, "After [the second physician] brought the x-rays back, he said, 'You still have an AC joint separation.' "