OPINION
{¶ 1} Appellants Rachel and Jason Freeland are appealing a ruling of the Harrison County Court of Common Pleas which granted summary judgment to a doctor and a hospital against claims of medical negligence and malpractice. The basis for summary judgment was apparently that Appellants were barred by the one-year statute of limitations for medical malpractice contained in R.C. § 2305.113 (formerly 2305.11). It is undisputed that Appellant Rachel Freeland received treatment from Appellee Dr. Ajit S. Modi ("Dr. Modi") on October 4, 2001, in the emergency room of Appellee Harrison Community Hospital ("Hospital"). She was given a prescription and was discharged, with a recommendation to see her family doctor. The next day, October 5, 2001, Rachel went to a different hospital and received a diagnosis for deep vein thrombosis ("DVT") in her right arm. Rachel underwent surgery for DVT on November 9, 2001.
 {¶ 2} Appellants delivered a 180-day letter to Appellees on October 2, 2002, pursuant to the dictates of R.C. §2305.113(B)(1). Appellants did not file their complaint until April 3, 2003, which was 183 days after the notice was given pursuant to R.C. § 2305.113(B)(1). Although Appellants contend that they did not discover their cause of action until May 13, 2002, Ohio law is clear that they had constructive knowledge of a malpractice claim on October 5, 2001, and thus, their complaint was time-barred. The trial court was correct in granting summary judgment, and is hereby affirmed.
 {¶ 3} Appellants filed their complaint on April 3, 2003 in the Harrison County Court of Common Pleas. The complaint alleged medical malpractice based on a failure to diagnose, a failure to order proper tests, misdiagnosis, misprescribing medicines, and other unspecified acts or omissions. On April 29, 2003, Hospital filed a motion to dismiss based on the expiration of the statute of limitations contained in R.C. § 2305.113(B)(1). On June 12, 2003, Appellants filed a response to the motion to dismiss, and included an affidavit from Rachel Freeland, which contained the following assertions:
 {¶ 4} "a. That on or about October 4, 2001, I went to the emergency room at Harrison Community Hospital and complained with pain and numbness to my right arm, shoulder and hand;
 {¶ 5} "b. I was treated with a prescription for Darvocet and Ativan;
 {¶ 6} "c. I went to Trinity Health Systems Emergency Room on or about October 5, 2001 where I was diagnosed with Deep Vein Thrombosis and started on Heparin;
 {¶ 7} "d. On or about November 9, 2001, I was admitted to Shadyside Hospital in Pittsburgh, PA, where surgery was performed;
 {¶ 8} "e. Throughout my hospitalization and multiple surgeries and post operative recovery at no time was I aware that Dr. Modi or Harrison Community Hospital had deviated in the standard of medical care by failing to perform diagnostic tests or inadequately performing an examination;
 {¶ 9} "f. During the first week of May 2002, I saw a lawyer advertisement on TV which caused me to consider my own situation.
 {¶ 10} "g. I did not become aware of a potential malpractice case until after consulting with attorney John Bremer on or about May 13, 2002."
 {¶ 11} On September 11, 2003, the trial court converted Appellees' motion to dismiss into a motion for summary judgment, and allowed the parties to submit additional exhibits. On September 26, 2003, Dr. Modi moved to join in the motion to dismiss filed by the Hospital. Dr. Modi's motion was sustained on October 31, 2003.
 {¶ 12} On February 6, 2004, the trial court filed its judgment entry granting Appellees' motion for summary judgment.
 {¶ 13} There does not appear to be any dispute among the parties of the critical facts in this case. Rachel Freeland was treated by Dr. Modi on October 4, 2001. Dr. Modi did not diagnose Rachel as suffering from DVT. Rachel was diagnosed with DVT on October 5, 2001, by a different doctor. Appellants consulted an attorney on May 13, 2002. Appellants delivered a 180-day letter to Appellees on October 2, 2002. The complaint was filed on April 3, 2003.
 {¶ 14} Appellants' two assignments of error are essentially identical and will be treated together:
 {¶ 15} "the trial court committed reversible error by granting defendants' motions for summary judgment inasmuch as reasonable minds could differ as to the accrual date for the running of the statute of limitations and that such question is a question of fact to be determined by the trier of fact.
 {¶ 16} "the trial court erred in granting defendants [SIC] motions for summary judgment where the preponderance of the evidence suggests that plaintiffs timely filed their complaint."
 {¶ 17} An appellate court conducts a de novo review of a trial court's decision to grant a motion for summary judgment, using the same standards as the trial court as set forth in Civ. R. 56(C). Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is properly granted where the moving party demonstrates that: "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." WelcoIndustries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346,617 N.E.2d 1129, quoting Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267.
 {¶ 18} The parties agree that the statute of limitations contained in former R.C. § 2305.11(B)(1) governs the claims contained in Appellants' complaint:
 {¶ 19} "(B)(1) Subject to division (B)(2) of this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued, except that, if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given."
 {¶ 20} R.C. § 2305.11(B)(1) permits a plaintiff to extend the one-year statute of limitations up to 180 days by delivering to the potential defendant a letter giving notice that a claim may be filed. Appellants contend that the 180-day letter they delivered on October 2, 2002, was only sent because they were exercising an abundance of caution, and not because the statute of limitations was about to run out. Appellants contend that the one-year statute of limitations for their malpractice claim did not begin to run until May 13, 2002, when they consulted an attorney and discovered that they had a possible cause of action.
 {¶ 21} Appellants correctly contend that a medical malpractice claim does not accrue until three elements are satisfied, as set forth in paragraph one of the syllabus ofHershberger v. Akron City Hosp. (1987), 34 Ohio St.3d 1,516 N.E.2d 204: "when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition." This test is known as the "discovery rule." See Oliver v. Kaiser CommunityHealth Found. (1983), 5 Ohio St.3d 111, 5 OBR 247,449 N.E.2d 438. The "discovery rule" is in contrast to the general rule that a cause of action accrues at the time the injury occurs. Kunz v.Buckeye Union Ins. Co. (1982), 1 Ohio St.3d 79, 81, 1 OBR 117,437 N.E.2d 1194.
 {¶ 22} The Hershberger test was refined in the case ofAllenius v. Thomas (1989), 42 Ohio St.3d 131, 133-134,538 N.E.2d 93:
 {¶ 23} "* * * the `extent and seriousness of his condition' language of the test set forth in Hershberger requires that there be an occurrence of a `cognizable event' which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies.
 {¶ 24} "Moreover, we do not believe that a patient must be aware of the full extent of the injury before there is a cognizable event. It is enough that some noteworthy event, the `cognizable event,' has occurred which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place.
 {¶ 25} "If a patient believes, because of harm she has suffered, that her treating medical professional has done something wrong, such a fact is sufficient to alert a plaintiff "`* * * to the necessity for investigation and pursuit of her remedies. * * *'" Graham v. Hansen (1982), 128 Cal.App.3d 965,973, 180 Cal.Rptr. 604, 609."
 {¶ 26} Appellants contend that a 180-day letter does not trigger the expiration of the one-year statute of limitations, nor does it indicate the accrual date of a medical malpractice cause of action. More importantly, Appellants argue that the date of the "cognizable event" triggering the accrual of a medical malpractice action is a factdriven event that should be left to the trier of fact to determine rather than to summary judgment. See Evans v. S. Ohio Med. Ctr. (1995), 103 Ohio App.3d 250,256, 659 N.E.2d 326, and McGuire v. Ortho Pharmaceutical Corp.
(1989), 60 Ohio App.3d 54, 573 N.E.2d 199.
 {¶ 27} In rebuttal, Appellees argue that Hershberger itself established that a plaintiff's discovery of the legal basis or legal theory supporting a medical malpractice claim is not what triggers the running of the statute of limitations:
 {¶ 28} "[S]everal courts have asserted a preference for the `legal injury' concept which definition includes all essential elements of a claim for medical malpractice. * * *
 {¶ 29} "* * *
 {¶ 30} "The concept of `legal injury' as initiating the running of the statute also is not without problems. Legal theories are ordinarily not within the province of the average layman. Furthermore, to utilize `legal injury' might effectuate a complete undermining of the discovery rule since anyone could allege ignorance of his legal rights. It would also be most difficult to refute such an allegation, whether or not true, without proceeding to full trial. An issue of fact could be compounded unless objective proof, which would ordinarily not be available, could sufficiently infer such subjective knowledge or belief. It is therefore the knowledge, actual or inferable, offacts, not legal theories, which initiates the running of the one-year statute of limitations." Hershberger at 5.
 {¶ 31} In Flowers v. Walker (1992), 63 Ohio St.3d 546,589 N.E.2d 1284, syllabus, the Ohio Supreme Court further held that: "In a medical malpractice case, the statute of limitations starts to run upon the occurrence of a `cognizable event.' The occurrence of a `cognizable event' imposes upon the plaintiff the duty to (1) determine whether the injury suffered is the proximate result of malpractice and (2) ascertain the identity of the tortfeasor or tortfeasors." Flowers also held that it was the constructive knowledge of facts, rather than the actual knowledge of the legal significance of those facts, that triggers the statute of limitations for medical malpractice. Id. at 549.
 {¶ 32} A subsequent diagnosis that clearly contradicts a prior misdiagnosis is the type of fact that qualifies as a "cognizable event." Rose v. Women's Health Clinic (1993),90 Ohio App.3d 776, 780, 630 N.E.2d 760. The fact that a plaintiff is unaware of the legal ramifications of a subsequent contradictory diagnosis is irrelevant with respect to the accrual date of the malpractice claim. Simonds v. Kearney (Feb. 20, 2002), 9th Dist. No. 01CA035.
 {¶ 33} Appellants have admitted that Rachel was diagnosed with DVT on October 5, 2001, and that she underwent surgery for that condition on November 9, 2001. The basis of Appellants' complaint is that Dr. Modi either failed to diagnose or misdiagnosed Rachel's condition on October 4, 2001. The record reflects that Dr. Modi may have made no diagnosis at all. Regardless, based on Rachel Freeland's own affidavit, she was put on notice on October 5, 2001, that Dr. Modi did not diagnose her condition as DVT, and it is on that date that Appellants' medical malpractice claims accrued. The statute of limitations for the claims expired on October 5, 2002. The October 2, 2002, letter extended this medical malpractice claim for 180 days. Using these dates, the statute of limitations expired on March 31, 2003. Appellants did not file their complaint until April 3, 2003. Therefore, the claims are time-barred.
 {¶ 34} Based on our analysis, Appellants' assignments of error are overruled and the judgment of the trial court is affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs.