[Cite as *Drummond v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-2408.]

| | |
|---|---|
| DEBRA DRUMMOND | Case No. 2020-00161JD |
| Plaintiff | Judge Patrick E. Sheeran<br>Magistrate Holly True Shaver |
| v. | |
| | DECISION |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} On February 10, 2021, Defendant filed a motion for summary judgment. On February 23, 2021, Plaintiff filed a timely response. On March 3, 2021, Defendant filed a reply. Pursuant to L.C.C.R. 4(D), the motion for summary judgment is now before the Court for a non-oral hearing. For the reasons stated below, Defendant's motion for summary judgment shall be granted.

**Standard of Review**

{¶2} Motions for summary judgment are reviewed under the standard set forth in Civ.R. 56(C), which states, in part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary

judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

"[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of material fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). To meet this initial burden, the moving party must be able to point to evidentiary materials of the type listed in Civ.R. 56(C). *Id.* at 292-293.

{¶3} If the moving party meets its initial burden, the nonmoving party bears a reciprocal burden outlined in Civ.R. 56(E), which states, in part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

## Background

{¶4} Plaintiff, a 58-year-old, African American female employee of Defendant, claims that Defendant unlawfully discriminated against her based upon her race and age in violation of R.C. 4112 when it failed to promote her to a Program Administrator 2 (PA2) position at Defendant's Ohio State Penitentiary (OSP) and, instead, selected Abbey Palmer, a 33-year-old, white female. Complaint, ¶¶ 1, 5-15. Plaintiff has worked for Defendant for twenty-three years and is currently a Correctional Lieutenant at OSP making a wage of $32.06 per hour. *Id.* at ¶ 2. Plaintiff was first hired by Defendant as a Corrections Officer in 1997 and has since served in various positions, including operational and administrative support in Defendant's Northeast Ohio Regional Office. *Id.* at ¶ 4.

{¶5} On June 17, 2018, Plaintiff submitted her application for an open PA2 position at OSP.[1]  *Id.* at ¶ 5.  The PA2 position is a permanent, classified, and exempt position with a starting wage of $25.50 per hour.  *Id.*  Despite being aware that the PA2 position was in a separate and different chain of command, Plaintiff viewed it as a promotion because it had more responsibility, a more consistent schedule, and more autonomy in a decision-making capacity.  Drummond Deposition, p. 24.

{¶6} The PA2 position "works under administrative direction & requires thorough knowledge of management principles/techniques, supervisory principles/techniques & agency policies & procedures to provide program direction by relieving the Warden of administrative duties to ensure institutional compliance of PREA (Prison Rape Elimination Act) & the ACA (American Correctional Association) accreditation standards."  Complaint, Ex. 2.  The posted external qualifications included: (1) "completion of undergraduate core program in business administration, management science or public administration" and two years of training or experience in a supervisory, administrative and/or managerial position; or (2) (a) "completion of undergraduate core program in academic field commensurate with program area to be assigned per approved Position Description on file" and two years training or experience in a supervisory, administrative and/or managerial position or a staff position involving planning, research and/or policy/procedure development; or (b) four years training or experience in business administration management science or public administration; or (c) one year experience "as Program Administrator 1. 63122."; or (d) "equivalent of Minimum Class Qualifications for Employment noted above."  *Id.*

---

[1] Defendant's personnel system also refers to this position as an "Operations Compliance Manager".  For clarity and consistency, the Court will refer to this position as the Program Administrator 2 (PA2).

{¶7} In general, applications are reviewed by Defendant's regional office in Columbus, Ohio. *See* Hammond Deposition, pp. 19, 23-25. Once applications for the PA2 position were submitted, they were screened by Dan Lipperman and Kimberly Freeman. *See* Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories and Requests for Production, Interrogatory No. 19; Hammond Depo., pp. 27-28. Lipperman is a Program Administrator 3 and was the subject matter expert regarding the PA2 position. *Id.* at Interrogatory No. 6. Freeman is a Human Capital Management Senior Analyst from Defendant's central human resources department selected to screen applications. *Id.* Fourteen applicants were screened for the PA2 position. *See* Complaint, Ex. 3; *see also* Lipperman Deposition, Ex. 8.

{¶8} Of these applicants, Lipperman recommended six be scheduled for an interview: Plaintiff, Palmer, Garry Galloway, Reena Gordon, Shawntae Jackson, and Lisa Remmick.[2] Lipperman Depo., p. 73, Ex. 9-11. Lipperman recommended Remmick and Jackson be scheduled for an interview despite noting that these candidates possessed educational degrees that were "unrelated".[3] *Id.* at p. 75-77, Ex. 11. Lipperman also recommended Jackson and Galloway despite noting that they did not meet all the direct work experience requirements. *Id.* Lipperman did not note that Palmer's educational degree in sociology was unrelated and he noted her to have met

_____

[2] The Court notes that there is no definitive demographic information provided for all the applicants who were offered interviews. The only evidence in the record regarding the demographic information of the other applicants is Plaintiff's perception that the applicants selected for an interview included two other black females, besides herself, one white male, and Palmer, a white female. *See* Drummond Depo., p. 55. The only information in the record regarding the age of the applicants is Plaintiff's birthdate and the alleged ages of Plaintiff and Palmer contained in Plaintiff's Complaint. *See id.* at p. 57; *see* Complaint, ¶¶ 1, 15.

[3] Plaintiff claims there was an office rumor that Lisa Remmick was the first choice for the PA2 position, and she would have been selected but she declined to interview due to family reasons. Drummond Depo., pp. 90-91. Plaintiff admits that she believed Remmick was qualified for the PA2 position and it would have been possible for Remmick to be selected over her. *Id.* at p. 91.

all the direct work experience requirements.[4]  *Id.* at Ex. 10.  Likewise, Plaintiff met all the direct work experience and educational requirements.  *Id.* at Ex. 9.

{¶9} Nevertheless, with respect to the review of Palmer's application specifically, Lipperman and Freeman came to different conclusions regarding Palmer's qualifications.  *See* Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories and Requests for Production, Interrogatory No. 19.  Freeman provided a Subject Matter Expert Summary indicating that Palmer met the initial minimum qualifications but to not proceed with an interview of Palmer because she had an unrelated degree and no supervisory experience.  *See* Lipperman Depo., Ex. 8.  As a result of the disagreement, Kim Fullen, a Human Capital Management Manager of Defendant, subsequently reviewed Palmer's application because she reviews "applications for open positions when there [is] a difference of opinion between screeners as to whether a candidate met the minimum qualifications."  Kim Fullen Affidavit, ¶ 3.  After her review, Fullen determined that Palmer "did meet the minimum qualifications for the Program Administrator 2 position at the Ohio State Penitentiary" and included her in the list of candidates to be interviewed for the position.  *Id.* at ¶ 14; *see also* Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories and Requests for Production, Interrogatory No. 19; *see also* Horton Deposition, pp. 38-40 ("Katrett Huckleby * * * said that her boss in Columbus seen it and said that [Palmer] was eligible to be interviewed * * * [t]hat she met the minimums.").

{¶10} In preparation for the interviews, Marla Hammond, the former Director of Personnel, and Katrett Huckleby, a Human Capital Management Manager, verified the information provided in the interview packets.  *See* Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories and Requests for Production,Interrogatory Nos. 6, 21.  Huckleby provided Hammond a revised version of

---

[4] Palmer states that she believed her sociology degree "fit public administration".  Palmer Depo., p. 47.

the Subject Matter Expert Summary indicating that Palmer was slotted for an interview; however, the document still reflects a "no" under the column labeled "Proceed (Yes or No)". *See* Lipperman Depo., Ex. 14; Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories and Requests for Production, Interrogatory No. 6. This version of the Subject Matter Expert Summary was then revised. *See* Lipperman, Depo., Ex. 16. In the revised version, the printed "No" is replaced with a handwritten "Yes" in the column labeled "Proceed (Yes or No)". *See id.* It is believed that Hammond is the individual who made this final correction. *See* Bowen Deposition, p. 29; *see also* Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories and Requests for Production, Interrogatory Nos. 6, 20. Although Hammond cannot specifically recall making this change, she admits that if she did make the change, it would have been at the direction of someone above her who made the decisions regarding which candidates got interviews. *See* Hammond Depo., pp. 42-45. Upon review, it appears this version of the Subject Matter Expert Summary was the copy included in the interview packet. *See* Horton Depo., p. 34, 37, 39-40; Lipperman Depo., pp. 87-88.

{¶11} To conduct interviews and review the interview packets, a three-member panel was assembled, which included Lipperman, Hammond, and Thomas Horton, the Corrections Warden's Assistant 2. *See* Complaint, ¶ 9; Richard Bowen Depo., pp. 12, 14; Lipperman Depo., pp. 13, 26; Horton Depo., pp. 37; Palmer Deposition, p. 12; Hammond Depo., pp. 12, 16; Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories and Requests for Production, Interrogatory No. 6. Following the interviews, the interview panel discussed how the interviews went with Warden Richard Bowen. Lipperman Depo., p. 119; Bowen Depo., p. 16; Horton Depo., p. 44. The interview panel unanimously decided to recommend Palmer for the PA2 position because she had the best interview. Horton Depo., p. 44; Lipperman Depo., p. 112-126, Ex. 58. According to Lipperman, Palmer stood out because of her previous

managerial experience with developing new policies at a private prison and her work with staff ethics. Lipperman Depo., p. 112, Ex. 20. Subsequently, Warden Bowen received and reviewed a written summary of the interview panel's recommendation. Bowen Depo., p. 13; Hammond Depo., p. 59. Bowen then made the final recommendation to Regional Director Todd Ishee that Palmer be appointed to the PA2 position based on the following reasons:

> Ms. Palmer holds a Bachelor of Arts Degree from Hiram College in Sociology. She has over 6 years training and experience working in the field of Corrections in various roles to include General Activities Therapist 2, Correction Officer and Staff & Ethics Liaison. As a Staff & Ethics Liaison at Core Civic start up facility, she acted as liaison between the organization, contractors and community, implemented policies & procedures, maintained ACA files, and developed & trained staff on policy and post orders. In addition, she has worked directly with line and executive level staff.

Bowen Depo., p. 13-14, Ex. 25. Ultimately, "Todd Ishee, Regional Director, made the final selection based on the recommendations from the interview panel and the Warden" on July 25, 2018. *See* Defendant's Responses and Objections to Plaintiff's First Set of Interrogatories and Requests for Production, Interrogatory No. 6; *see also* Bowen Depo., p. 55-56, Ex. 25.

{¶12} Plaintiff asserts that Palmer should not have been selected over her for the PA2 position because Palmer was not truthful in her interview and was not as qualified given her lack of auditing experience. Drummond Depo., p. 29-32. Plaintiff states there is a culture within the department to hire whomever they want regardless of whether the individual is qualified. *Id.* at p. 89. Plaintiff claims that Palmer was selected because Hammond and Horton had a pre-existing social relationship with Palmer. *Id.* at pp. 51-52. Despite these contentions that Palmer had a social relationship with Hammond and Horton, Palmer states she knew Hammond from her previous employment at CoreCivic

and she only knew Horton from her employment at OSP. Palmer Depo., pp. 12-13. Similarly, Plaintiff states that she felt she was not selected because she was not friends with Horton. *Id.* at p. 79; *see also* Bowen Depo., Ex. 37, 39. However, Hammond recalled Plaintiff not performing well in her interview because she struggled answering questions and seemed extremely nervous. Hammond Depo., pp. 52-55.

{¶13} Additionally, Plaintiff believes the interview panel saw her as an older, African American who has been with OSP awhile and she should "move aside and let someone else have the job", such as Palmer, who is a younger, white applicant who was "just starting out with her family". *Id.* at pp. 57-58. Plaintiff claims that the interview panelists discriminated against her and selected Palmer "just because they could." *Id.* at p.83-87. Specifically, Plaintiff believes that Lipperman and Horton racially discriminated against her because they are white males and would believe Palmer was more entitled to the PA2 position because she is white. *Id.* at p. 54.

{¶14} However, Plaintiff admits that these are her personal beliefs, and she does not have any first-hand knowledge of the thoughts of the interview panelists. *Id.* at p. 58. Additionally, Plaintiff states that she is aware that Warden Bowen made the final recommendation regarding Palmer's appointment to the PA2 position, and she admits that she does not believe Bowen discriminated against her because of her race or age. *Id.* at pp. 57, 61. Plaintiff also admits that no one from the interview panel made any comments regarding her age or race. *Id.* at pp. 51, 53, 54, 58. Moreover, Plaintiff claims that when she asked Horton and Hammond why Palmer was selected for the PA2 position over her, they both stated that Palmer had more experience and brought more experience from the outside. *Id.* at pp. 66, 68.

{¶15} Following Palmer's appointment to the PA2 position, Palmer did not start the job immediately because she was on medical leave due to her pregnancy. Bowen Depo., pp. 56-57, Ex. 30; Horton Depo., pp. 45-50; Palmer Depo., p.10. While Palmer was on medical leave, Horton appointed Plaintiff to a Temporary Work Level

assignment as the Program Administrator 2 from August 2018 to November 2018. Complaint, ¶ 4; Horton Depo., p. 52; Bowen Depo., p. 60; Drummond Depo., p. 26; *see* Lipperman Depo., Ex. 28. Plaintiff believes she was offered this assignment because "they know that they should have given me the job in the first place." Drummond Depo., p. 26. However, Bowen stated that Horton offered Plaintiff the assignment so that she could get more experience. Drummond Depo., p. 69; Bowen Depo., p. 60. Nevertheless, Horton stated that Plaintiff was able to perform the duties of the temporary work level assignment. Horton Depo., pp. 52-53.

**Law and Analysis**

{¶16} R.C. 4112.02 provides, in pertinent part, that: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race, color, * * * age * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any other matter directly or indirectly related to employment." Generally, Ohio courts look to federal anti-discrimination case law when examining employment discrimination cases made under state law. *Nelson v. Univ. of Cincinnati*, 10th Dist. Franklin No. 16AP-224, 2017-Ohio-514, ¶ 31. "'To prevail in an employment discrimination case, a plaintiff must prove discriminatory intent' and may establish such intent through either direct or indirect methods of proof." *Dautartas v. Abbott Labs.,* 10th Dist. Franklin No. 11AP-706, 2012-Ohio-1709, ¶ 25, quoting *Ricker v. John Deere Ins.* Co., 133 Ohio App.3d 759, 766 (10th Dist.1998). In this case, Plaintiff seeks to establish discriminatory intent through the indirect method, which is subject to the burden shifting analysis established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Nist v. Nexeo Solutions, LLC,* 10th Dist. Franklin No. 14AP-854, 2015-Ohio-3363, ¶ 31. "Under *McDonnell Douglas*, a plaintiff must first present evidence from which a reasonable [trier of fact] could conclude that there exists

a prima facie case of discrimination." *Turner v. Shahed Ents.,* 10th Dist. Franklin No. 10AP-892, 2011-Ohio-4654, ¶ 11-12.

{¶17} The same prima facie and burden-shifting analysis is used in determining both age and race discrimination. *Howard v. Contech Constr. Prods.*, 12th Dist. Butler No. CA2003-01-018, 2003-Ohio-6546, citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 421 N.E.2d 128 (1981). Plaintiff must show that she: (1) was a member of a protected class at the time of the alleged discrimination; (2) was subjected to an adverse employment action; (3) was otherwise qualified for the position; and, (4) that after Plaintiff was rejected, a person who did not belong to the protected class was selected. *McDonnell Douglas Corp.* at 802. With respect to age discrimination claims, the statutorily protected class is 40 years of age or older. *See* R.C. 4112.14(A). "If the plaintiff meets her initial burden, the burden then shifts to the defendant to offer 'evidence of a legitimate, nondiscriminatory reason for' the adverse action." *Turner*, *supra*, at ¶ 14.

{¶18} "The employer meets its burden of production by submitting admissible evidence that '*taken as true, would permit* the conclusion that there was a nondiscriminatory reason for the adverse action,' and in doing so rebuts the presumption of discrimination that the prima facie case establishes." *You v. Ne. Ohio Med. Univ.*, 10th Dist. Franklin No. 17AP-426, 2018-Ohio-4838, ¶ 46, quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). "If the defendant meets its burden, the burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason was actually a pretext for unlawful discrimination." *Turner, supra*, at ¶ 14.

{¶19} Upon review, Plaintiff has established that she was a 58-year-old, African American female when she applied for the PA2 position with Defendant; that she was qualified for the position and selected for an interview; and that Abbey Palmer, a 33-year-old, white female, was selected for the position. The Court notes that, although neither the job applications nor the other Civ.R. 56 evidence provided definitive

demographic information regarding the race or age of plaintiff, Palmer, or the other applicants, Defendant does not dispute that Plaintiff can establish her prima facie case for either her race or age discrimination claims. Therefore, viewing the record in a light most favorable to plaintiff, the Court finds that Plaintiff has stated a prima facie case of employment discrimination based on race and age.

{¶20} The burden of production then shifts to Defendant to demonstrate a legitimate, nondiscriminatory reason for not selecting Plaintiff for the PA2 job position. Here, Defendant claims that it selected Palmer to fill the PA2 position because Palmer performed the best in her interview process. All three interview panelists—Horton, Lipperman, and Hammond—unanimously agreed that Palmer had the best interview and recommended her for the PA2 position. Lipperman specifically recalled Palmer stood out because of her previous managerial experience with developing new policies at a private prison and her work with staff ethics. Additionally, Hammond recalled that Plaintiff struggled to answer questions in her interview. Then, after a discussion with the interview panelists, Warden Bowen ultimately recommended Palmer be appointed to the PA2 position based on her experience and education, which was approved by Regional Director Ishee. Thus, the Court finds that Defendant has shown a legitimate, nondiscriminatory reason for not hiring Plaintiff for the PA2 position.

{¶21} Now, the burden shifts back to Plaintiff to establish that Defendant's reasons for selecting Palmer for the PA2 position were pretext for unlawful discrimination. In seeking summary judgment, Defendant argues that Plaintiff's employment discrimination claims fail as a matter of law because Plaintiff provided no evidence to show that Defendant's nondiscriminatory reason for selecting Palmer was pretext for discrimination. In response, Plaintiff argues that Defendant's motion should be denied because a genuine issue of material fact exists regarding whether Palmer was qualified to be selected for an interview. Specifically, Plaintiff contends that Palmer was not qualified because she had a degree unrelated to the education required by the

stated minimum qualifications and Palmer embellished her auditing experience on her application, which indicates Defendant's reasons for selecting Palmer were pretext for discrimination. The Court disagrees.

{¶22} Although the Court acknowledges that there was an initial disagreement regarding Palmer's qualification for an interview, the disagreement was ultimately resolved when Fullen reviewed Palmer's qualifications and made the final decision to include Palmer in the interview list. With specific regard to Palmer's education, Palmer stated that she believed her sociology degree satisfied the minimum qualifications. While Palmer's degree in sociology does not appear on its face to unequivocally be an "undergraduate program in business administration, management science or public administration," the Court finds that this is an imprecise standard and does not support finding that Defendant's reasoning for selecting Palmer was pretextual absent additional evidence. Additionally, Lipperman recommended other applicants for an interview despite noting that their educational degrees were unrelated, one of which Plaintiff acknowledged could have been selected over her for the PA2 position because Plaintiff believed her to be qualified for the job. Furthermore, Plaintiff provides no evidence besides her own belief that Palmer embellished her auditing experience in her application. Therefore, the Court finds that Plaintiff has not produced evidence sufficient to reasonably doubt the employer's explanation for selecting Palmer. *See Ceglia v. Youngstown State Univ.*, 2015-Ohio-2125, 38 N.E.3d 1222, ¶ 27 (10th Dist.).

{¶23} Once Palmer was included among the qualified candidates to be interviewed, Defendant had the discretion to use its subjective judgment "to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *See Rafaei v. Ohio State Univ. Hosp.*, 10th Dist. Franklin No. 10AP-1193, 2011-Ohio-6727, ¶ 33. As explained above, Defendant has established that it has a legitimate, nondiscriminatory reason for selecting Palmer for the PA2 position. Although Plaintiff states that it is her belief that the interview panelists discriminated against her

"just because they could," she provides no evidence to support these contentions. Indeed, Plaintiff contends that Palmer was really selected based on her pre-existing relationships with both Horton and Hammond. While the Court acknowledges that Palmer did know Hammond prior to applying for the PA2 position, there is no evidence that Palmer had a social relationship with either Hammond or Horton outside the workplace. Additionally, there is no evidence that Palmer had any kind of prior relationship with the individuals from defendant's central office who selected which applicants would get an interview. Even if such evidence was present, an employer may "make hiring decisions based on its familiarity and personal relationships with candidates." *McDaniels v. Plymouth-Canton Cmty. Sch.,* 755 Fed.Appx.461, 470 (6th Cir.2018). Thus, Plaintiff cannot establish an inference of discrimination based on race or age with her perceptions of favoritism. *See Morris v. Shinseki*, 18 F.Supp.3d 923, 9634-935 (S.D.Ohio 2014); *Thomas v. McDonald*, 169 F.Supp.3d 170, 185 (D.D.C.2016); *Potts v. Catholic Diocese*, 159 Ohio App.3d 315, 2004-Ohio-6815, 823 N.E.2d 917, ¶ 26 (7th Dist.). Additionally, when Plaintiff asked those on the interview panel why Palmer was selected for the position instead of her, Plaintiff stated that they told her that it was based on Palmer's outside experience. Moreover, Plaintiff admitted that neither Horton, Hammond nor Lipperman made any remarks regarding her race or age. Furthermore, Plaintiff acknowledged that Warden Bowen made the final decision regarding which candidate would be appointed to the PA2 position, and Plaintiff admitted that she did not believe Warden Bowen would discriminate against her.

{¶24} Plaintiff has provided no other argument or Civ.R. 56 evidence to demonstrate that Defendant's decision to select Palmer was pretextual. *See Boggs v. Scotts Co.*, 10th Dist. Franklin No. 04AP-425, 2005-Ohio-1264, ¶ 10 ("To establish the existence of a genuine issue of material fact, the non-moving party must do more than simply resist the allegations in the motion."). Consequently, the Court finds that, even construing the evidence most strongly in favor of Plaintiff, no genuine issue of material

fact exists as to pretext.  Accordingly, Defendant's motion for summary judgment is GRANTED.


PATRICK E. SHEERAN
Judge

[Cite as *Drummond v. Ohio Dept. of Rehab. & Corr.*, 2021-Ohio-2408.]

| | |
|---|---|
| DEBRA DRUMMOND | Case No. 2020-00161JD |
| Plaintiff | Judge Patrick E. Sheeran<br>Magistrate Holly True Shaver |
| v. | <u>JUDGMENT ENTRY</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

{¶25} A non-oral hearing was conducted in this case upon Defendant's motion for summary judgment. For the reasons set forth in the decision filed concurrently herewith, Defendant's motion for summary judgment is GRANTED and judgment is rendered in favor of Defendant. All previously scheduled events are VACATED. Court costs are assessed against Plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK E. SHEERAN
Judge

**Filed May 24, 2021**
**Sent to S.C. Reporter 7/14/21**