DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas which denied appellant,[1] the Estate of Sheldon J. Schachner ("appellant"), a directed verdict on appellees' cause of action for medical malpractice. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} In 1996, Douglas Hartman went to Northwest Primary Care Physicians to seek treatment for hearing loss in his right ear. He was seen by internist Dr. John L. Yuhas, Jr. Dr. Yuhas initially diagnosed Hartman with eustachian tube dysfunction. The eustachian tube runs between the middle ear and the back of the throat. The tube's main function is to balance the pressure between the ear and the sinuses. Dr. Yuhas prescribed an antihistamine and scheduled Hartman for a follow up visit in two weeks. Hartman's condition did not improve while he was on the medication so he decided to make an appointment with an otolaryngologist or a doctor specializing in the treatment of ear, nose and throat ailments ("ENT)."
 {¶ 3} Hartman went to see ENT Dr. Sheldon Schachner on July 17, 1996. Dr. Schachner examined the outer part of Hartman's ear and the fluid behind his ear drum. Using an audioscope and tuning forks, Dr. Schachner determined that Hartman was suffering from notable hearing loss in his right ear. He diagnosed Hartman with viral cochleitis and prescribed the vitamin niacin. He advised Hartman to have his hearing checked again in six months. Dr. Schachner communicated his findings in a consultation letter to Dr. Yuhas.
 {¶ 4} Hartman took niacin for four months but experienced no improvement with his hearing. He never returned to Dr. Schachner.
 {¶ 5} On January 23, 1998, Hartman went to see audiologist, Robert P. Gamble, for a hearing aid evaluation. Gamble's tests also showed that Hartman suffered from severe hearing loss in his right ear which Gamble found to be consistent with the diagnosis of a viral infection. Gamble explained to Hartman his options with regard to hearing devices. Essentially, Gamble did not believe that a hearing aid would be a viable option as it would merely amplify the garbled sounds Hartman was already hearing in his right ear. Hartman chose to forgo the hearing aid option.
 {¶ 6} In 1999, Hartman began to experience dizziness along with his hearing loss. He decided to schedule an appointment with Dr. Benjamin W. Murcek, another ENT. After conducting his own preliminary tests and reviewing Hartman's past treatment, Dr. Murcek sent Hartman for a magnetic resonance imaging examination ("MRI"). The test revealed that Hartman had an acoustic neuroma or a tumor in his right ear. Hartman underwent surgery to have the tumor removed. Because of the tumor's size, the surgery was invasive. A part of Hartman's cerebellum had to be removed and he sustained some permanent facial paralysis.
 {¶ 7} On February 12, 2001, Douglas A. and Lisa A. Hartman filed a medical malpractice action against Schachner and appellees, Dr. John Yuhas, Northwest Primary Care Inc, Robert P. Gamble and Professional Hearing Services Inc. On May 21, 2003, Schachner's motion for summary judgment was denied. The summary judgment motions of appellees Yuhas, Northwest Primary Care, Gamble and Professional Hearing Services were granted.
 {¶ 8} A bench trial commenced on February 17, 2004. Evidence at trial showed that at the time of Hartman's visit to Dr. Schachner, the tumor was, to a reasonable degree of medical certainty, relatively small and confined to the auditory canal. By the time of his visit to Dr. Murcek, the tumor was a large four centimeter mass, infringing on his brainstem and growing around his facial nerve requiring removal of his facial nerve. Evidence further showed that the standard of care for an ENT such as Dr. Schachner required him to schedule a follow-up visit with Hartman in 1996 and explore, among many diagnoses, the possibility that he was suffering from an acoustic neuroma. Experts testified that had Dr. Schachner scheduled a follow up visit and ordered an MRI in 1996, after the Niacin failed to help Hartman, the tumor would have been diagnosed and the required surgery would have been less invasive.
 {¶ 9} On October 19, 2004, the trial court ruled in favor of the Hartmans and against Schachner finding that he had breached the applicable standard of care by failing to advise Douglas Hartman to return for a follow-up visit in order to re-evaluate his condition in a timely fashion, and to rule in or rule out an acoustic neuroma if his condition had not improved. The Hartmans were awarded $560,803.79 with interests and cost. Schachner now appeals setting forth the following assignment of error:
 {¶ 10} "The trial court committed reversible error when it failed to direct a verdict in favor of appellant on the basis that appellees' claim was untimely due to expiration of the statute of limitations."
 {¶ 11} Civ.R. 50(A)(4) states that "[w]hen a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue." A motion for a directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses.Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,119-120. When the party opposing the motion fails to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. Hargrove v. Tanner (1990),66 Ohio App.3d 693, 695. A trial court's grant or denial of a motion for directed verdict presents a question of law, which an appellate court reviews de novo. Schafer v. RMS Realty (2000),138 Ohio App.3d 244, 257.
 {¶ 12} R.C. 2305.11(B)(1) states, in relevant part:
 {¶ 13} "Subject to division (B)(2) of this section, an action upon a medical, dental, optometric, or chiropractic claim shall be commenced within one year after the cause of action accrued, except that, if prior to the expiration of that one-year period, a claimant who allegedly possesses a medical, dental, optometric, or chiropractic claim gives to the person who is the subject of that claim written notice that the claimant is considering bringing an action upon that claim, that action may be commenced against the person notified at any time within one hundred eighty days after the notice is so given."
 {¶ 14} A medical malpractice claim does not accrue until three elements are satisfied, as set forth in paragraph one of the syllabus of Hershberger v. Akron City Hosp. (1987),34 Ohio St.3d 1:
 {¶ 15} "* * * when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition."
 {¶ 16} This test is known as the "discovery rule." SeeOliver v. Kaiser Community Health Found. (1983),5 Ohio St.3d 111. The "discovery rule" is in contrast to the general rule that a cause of action accrues at the time the injury occurs.Freeland v. Harrison Community Hospital, Inc., 7th Dist. No. 04 HA 568, 2004-Ohio-6815, Kunz v. Buckeye Union Ins. Co. (1982),1 Ohio St.3d 79, 81.
 {¶ 17} The Hershberger test was further discussed inAllenius v. Thomas (1989), 42 Ohio St.3d 131, 133-134:
 {¶ 18} "* * * the `extent and seriousness of his condition' language of the test set forth in Hershberger * * * requires that there be an occurrence of a `cognizable event' which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies.
 {¶ 19} "Moreover, we do not believe that a patient must be aware of the full extent of the injury before there is a cognizable event. It is enough that some noteworthy event, the `cognizable event,' has occurred which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place.
 {¶ 20} "If a patient believes, because of harm she has suffered, that her treating medical professional has done something wrong, such a fact is sufficient to alert a plaintiff `" * * * to the necessity for investigation and pursuit of her remedies. * * *"' Graham v. Hansen (1982), 128 Cal.App.3d 965,973, 180 Cal.Rptr. 604, 609."
 {¶ 21} The issue to be determined in reviewing Schachner's motion for a directed verdict is when the applicable statute of limitations began to run. Hartman sent a "notice of claim" letter to Schachner pursuant to R.C. 2305.11(B)(1) on September 25, 2000. Hartman filed suit on February 12, 2001. Schachner contends that Hartman's lawsuit is untimely because his cause of action accrued for purposes of R.C. 2305.11(B)(1) on September 21, 1999, the date of Hartman's first office visit with Dr. Murcek. Appellees contend that their suit is timely because their cause of action accrued on October 6, 1999, the day Hartman was told the results of his MRI.
 {¶ 22} Hartman testified at trial that at his initial office visit with Dr. Murcek, his hearing was tested and he was seen by an audiologist. The audiologist also conducted some balancing tests. After Dr. Murcek reviewed Hartman's test results and his medical history, Dr. Murcek surmised that a tumor was causing the hearing loss. Hartman testified that Murcek ordered the MRI to rule out or confirm his suspicion. On cross-examination, Hartman testified that at the conclusion of his September 21, 1999 office visit with Dr. Murcek, he knew that he might have a tumor. Hartman testified that Murcek told him "[l]ets have you go through an MRI to be sure of the diagnosis." Hartman testified that after his first visit with Dr. Murcek, he understood that Dr. Shachner had missed an opportunity to diagnose his tumor in 1996.
 {¶ 23} At his second office visit with Dr. Murcek on October 6, 1999, Hartman learned that he definitely had a tumor. Dr. Murcek looked at Hartman's MRI results, diagnosed him with an acoustic neuroma and referred him to a neurosurgeon at the Cleveland Clinic. Hartman, on cross-examination, testified that he did not know the cause of his hearing loss until his second visit with Dr. Murcek when the doctor interpreted the MRI results.
 {¶ 24} Based on the foregoing testimony and, mindful of the fact that a patient need not be aware of the full extent of the injury before there is a "cognizable event", we find, after construing the evidence most strongly in favor of appellees, that reasonable minds could disagree as to the date of the "cognizable event" triggering the running of the statute of limitations. Accordingly, the court did not error in denying Schachner's motion for directed verdict and Schachner's assignment of error is found not well-taken.
 {¶ 25} Plaintiffs-appellants Douglas A. Hartman et al., have filed an appeal setting forth the following assignments of error:
 {¶ 26} "I. The trial court erred in granting summary judgment to defendants Yuhas, Northwest Primary Care and Gamble on the basis that Hartman knew the delayed diagnosis was caused in part or whole by the wrongful conduct of these defendants as of September 21, 1999.
 {¶ 27} "II. The trial court erred in granting summary judgment to the defendants Yuhas and Primary Care on the basis that the physician patient relationship with these defendants terminated for this condition on September 21, 1999.
 {¶ 28} "III. The trial court erred in denying summary judgment to plaintiff finding defendant Gamble was not negligent per se pursuant to R.C. 4753.14.
 {¶ 29} In their first assignment of error, plaintiffs-appellants contend that the court erred in granting summary judgment to Yuhas, Northwest Primary Care, Gamble and Professional Hearing Services. Specifically, plaintiffs-appellants contend that the court erred in determining that their cause of action filed against appellees was barred by the statute of limitations.
 {¶ 30} On review, appellate courts employ the same standard for summary judgment as trial courts. Lorain Natl. Bank v.Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. The motion may be granted only when it is demonstrated:
 {¶ 31} "* * * (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 67. Civ.R. 56(C).
 {¶ 32} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleading, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); Riley v. Montgomery
(1984), 11 Ohio St.3d 75, 79. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. Russell v. Interim Personnel, Inc. (1999),135 Ohio App.3d 301, 304. Needham v. Provident Bank (1996),110 Ohio App.3d 817, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.
 {¶ 33} Appellees Yuhas, Northwest Primary Care, Gamble and Professional Hearing Services filed a motions for summary judgment alleging that Hartmans' action against them was barred by the statute of limitations. The court found that for purposes of R.C. 2305.11(B)(1), the cognizable event occurred on October 6, 1999, the date Hartman received the results of his MRI. Hartman contends that the cognizable event, with regards to Yuhas and Northwest Primary Care, occurred on September 29, 2000. On said date, Hartman received a copy of a report from Schachner, sent to Yuhas, recommending that Hartman have his hearing retested in six months. Hartman contends that he was not aware of Yuhas and Primary Care's participation in his misdiagnosis until he saw that report.
 {¶ 34} The record shows that Hartman initially sought treatment from Yuhas for his hearing loss in 1996, and he was misdiagnosed with eustachian tube dysfunction. On October 6, 1999, the day he received the results of his MRI, Hartman learned the cause of his hearing loss. We find this date to be the "cognizable event" that triggered the running of the statute of limitations. Therefore, plaintiffs-appellants had until October 6, 2000, to file a claim against Yuhas or to send Yuhas a "notice of claim" letter pursuant to R.C. 2305.11(B)(1). Plaintiffs-appellants did not send Yuhas a "notice of claim" letter but commenced a medical malpractice action against Yuhas on February 12, 2001, well beyond the one year statute of limitations prescribed by R.C. 2305.11. Accordingly, summary judgment for Yuhas and Northwest Primary Care on the issue of statute of limitations was proper.
 {¶ 35} As for Gamble and Professional Hearing Services, the applicable statute of limitations can be found in R.C. 2305.10
which provides for a two-year statute of limitations for personal injury claims. The two year period begins running from the date plaintiff's injury arose. The trial court in this case determined that for purposes of R.C. 2305.10, Hartman's injury occurred on January 23, 1998, the date he saw Gamble for a hearing aid evaluation. Consequently, plaintiffs-appellants had until January 23, 2000 to file suit against Gamble.
 {¶ 36} Plaintiffs-appellants are seeking to apply the discovery rule to their claim against Gamble thereby viewing October 6, 1999, as the date Hartman's injury arose. Under this application, plaintiffs-appellants' claims against Gamble and Professional Hearing Services would not be time barred.
 {¶ 37} The discovery rule has been given narrow application and applied in only limited situations. State ex rel. Hunter v.City of Alliance, 5th Dist. No. 2001CA00101, 2002-Ohio-1130. Plaintiffs-appellants have not cited or can we find any case law which would support the application of the discovery rule to their claims against Gamble and Professional Hearing Services. Accordingly, the court did not err in granting summary judgment to Gamble and Professional Hearing Services. Plaintiffs-appellants' first assignment of error is found not-well taken.
 {¶ 38} In their second assignment of error, plaintiffs-appellants contend that the court erred in finding that the physician/patient relationship between Hartman and Yuhas terminated on October 6, 1999. Plaintiffs-appellants are attempting to apply the so called "termination" rule which provides that a medical malpractice cause of action does not accrue until the physician-patient relationship for the condition at issue has ended. See Frysinger v. Leech (1987),32 Ohio St.3d 38. Hartman contends that he terminated his relationship with Yuhas in February 2001 when the malpractice action was filed. We disagree.
 {¶ 39} On October 6, 1999, Hartman's condition was diagnosed and he was referred to a neurosurgeon for treatment. On that date, Hartman and Yuhas' relationship for purposes of treating his hearing loss ended. Accordingly, the court did not err in granting summary judgment to Yuhas and Northwest Primary Care. Plaintiffs-appellants' second assignment of error is found not well-taken.
 {¶ 40} Given our determination of plaintiffs-appellants' first assignment of error finding that their action against Gamble and Professional Hearing Services was time barred, plaintiffs-appellants' third assignment of error is not well-taken.
 {¶ 41} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Defendant-appellant and plaintiffs-appellants are ordered to pay equally the court costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Singer, P.J., Skow, J., M. Parish, J. concur.
[1] Dr. Sheldon J. Schachner, the original defendant in this case, died after litigation of this case was commenced. His surviving spouse, Gretchen Schachner was appointed administratrix of his estate.