JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant Robin A. Olszewski appeals from a common pleas court judgment which concluded that her medical malpractice claim against defendant-appellee Dr. Charles R. Hoyt, M.D., was time-barred. We find no error in the common pleas court's decision, and accordingly affirm.
 {¶ 2} Plaintiff filed her complaint on April 29, 2002, asserting medical malpractice claims against Drs. Robert Blankfield and Charles R. Hoyt, M.D., University Primary Care Physicians, and various John Doe defendants. All of the defendants moved for summary judgment on statute of limitations grounds. Plaintiff subsequently voluntarily dismissed her claims against Dr. Blankfield and University Primary Care Physicians, without prejudice. The court then granted Dr. Hoyt's motion for summary judgment finding that "[t]he plaintiff's testimony at pages 49-52 of her deposition was unequivocal that she learned from Dr. Rodriguez, of the possibility that an earlier pap smear would have detected the cancer. Hence, the cognizable event was no later than the end of 2000, and the lawsuit was filed more than one year later, i.e., beyond the end of 2001." Plaintiff appeals from this judgment.
 {¶ 3} The evidence attached to Dr. Hoyt's motion for summary judgment included the deposition testimony of Dr. Hoyt and of the plaintiff. Attached to plaintiff's response were copies of correspondence among counsel; the deposition testimony of plaintiff and co-defendant Dr. Robert Blankfield; expert opinions of Drs. Michael Macfee, M.D. and John N. Sheagren, M.D.; a copy of plaintiff's high school records; and affidavits of plaintiff's attorneys. This evidence disclosed the following undisputed facts.
 {¶ 4} Plaintiff treated with Dr. Hoyt from January 7, 1992 until Dr. Hoyt's retirement in October 1997. Dr. Hoyt never gave plaintiff a pap test.
 {¶ 5} Dr. Blankfield took over Dr. Hoyt's practice after Hoyt's retirement. Plaintiff first saw Dr. Blankfield on March 26, 1999, complaining of stomach pain. Physical examination suggested that this was an upper abdominal ailment, and he therefore did not perform a gynecological examination.
 {¶ 6} He saw her again on December 30, 1999, when she complained of pain in the lower left quadrant of her abdomen. Vaginal examination at that time revealed profuse bleeding, as a result of which he was unable to visualize the cervix. He believed that the dysfunctional bleeding was the result of a hormone imbalance, and prescribed Provera and ibuprofen. He saw her again on January 3, 2000, at which time she reported that the bleeding stopped but that she continued to be in pain. Examination revealed that the cervix was "very friable," and the vagina was malodorous, with a "bubbly discharge." He diagnosed cervicitis, prescribed an antibiotic, and instructed plaintiff to return in two weeks. Plaintiff returned on January 17, 2000. Although there was no bleeding when he began his exam, Dr. Blankfield noted marked vaginal bleeding upon the introduction of the speculum which prevented him from visualizing the cervix. He then referred plaintiff to a gynecologist, Dr. Tigert.
 {¶ 7} Plaintiff testified that when she saw Dr. Tigert, "[h]e packed me with gauze and — just get her to the emergency room." She testified that on January 28, 2000, Dr. Michael Rodriguez informed plaintiff that she had Stage III-B cervical cancer, and that she had had cancer for "years." She testified that Dr. Rodriguez and Dr. Rose told her she could have avoided cancer if she had had earlier pap tests, but she could not remember when they told her this. She last saw Dr. Rodriguez in 2000.
 {¶ 8} The parties agree that an action upon a medical malpractice claim must be commenced within one year after the cause of action accrued. R.C. 2305.11(B)(1). They further agree that a cause of action for medical malpractice accrues and the statute of limitations begins to run when the patient discovers or, in the exercise of reasonable care and diligence, should have discovered the resulting injury, or when the physician-patient relationship for the condition terminates, whichever is later.Frysinger v. Leech (1987), 32 Ohio St.3d 38, paragraph one of the syllabus. This discovery rule requires the occurrence of a "cognizable event" which leads or should lead the plaintiff to believe that her condition is related to a medical diagnosis, treatment, or procedure which she previously received, and places (or should place) the plaintiff on notice of the need to pursue her remedies. Flowers v. Walker (1992), 63 Ohio St.3d 546, 548-49." A plaintiff need not have discovered all the relevant facts necessary to file a claim in order to trigger the statute of limitations. Rather, the `cognizable event' itself puts the plaintiff on notice to investigate the facts and circumstances relevant to her claim in order to pursue her remedies." Id. at 549.
 {¶ 9} Plaintiff contends that her cancer diagnosis was not sufficient to put her on notice that she may have received substandard medical care in the past. She claims that, as a result of her below average intelligence and developmental disability, she was not actually aware that her doctors had done anything wrong until she spoke with an attorney about an unrelated matter in October 2001 and the issue happened to arise in their conversation. Therefore, she claims, her cause of action filed in April 2002 was timely.
 {¶ 10} The "cognizable event" which started the statute of limitations in this case is not the time when the plaintiff was actually informed that her doctors may have been negligent in not giving her pap tests over the years. "[C]onstructive knowledge of facts, rather than actual knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." Flowers, 63 Ohio St.3d at 549 (emphasis omitted.) A "cognizable event" is one "which does or should alert a reasonable person-patient that an improper medical procedure, treatment or diagnosis has taken place." Allenius v. Thomas
(1989), 42 Ohio St.3d 131, 134. This is an objective standard, not a subjective standard. Rose v. Women's Health Clinic
(1993), 90 Ohio App.3d 776, 780.
 {¶ 11} Notwithstanding her developmental disability, plaintiff was aware of facts which would have lead a reasonable person to investigate further at the time of her diagnosis, so the statute of limitations began to run at that time. Plaintiff testified that after her diagnosis in January or February of 2000, she was told not only that she had stage III-B cancer, but also that she had had it for "years." This information was sufficient to put the plaintiff on notice to investigate why her doctors had not diagnosed her cancer earlier, and whether her prognosis and treatment would have been different if they had. Cf. Rose, 90 Ohio App.3d at 780. Her complaint was filed more than one year after this cognizable event. Hence, the common pleas court properly dismissed it as time-barred.
 {¶ 12} Accordingly, we affirm.
Judgment affirmed.
Blackmon, P.J., and Sweeney, J., concur.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.