OPINION *Page 2 
{¶ 1} Defendant-Appellant, William McKinley Freeman, appeals his conviction and sentence for one count of felonious assault, a felony of the second degree. Plaintiff-Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND THE CASE {¶ 2} On September 9, 2006, Appellant was visiting the home of Norman Cox at 1116 — 11th Street, Canton, Ohio. Also at Cox's home that evening were Anthony Coram, Roy Tornero, Brenda Sells, a woman named Robin, a woman named Didi and another woman named Sarah. Appellant was going to and from the home that evening, purchasing cocaine for Cox and some of his visitors.
 {¶ 3} Cox testified that he was upstairs sleeping when Appellant returned to the home. Cox came downstairs and he heard Appellant demand to be let in through the locked back door. Cox refused to let Appellant in. Cox, Coram, Toreno and Sells testified at trial they heard glass breaking and Appellant unlocked the back door and came in.
 {¶ 4} Coram and Appellant began fighting in the kitchen. At some point during the fight, Cox began striking Appellant with a police-issue night stick. Cox, Coram, Toreno and Sells testified that Appellant grabbed a large knife from the kitchen counter and chased Cox upstairs. At this point, the visitors left the home — some went to call 911. Cox continued to strike Appellant with the night stick.
 {¶ 5} In an upstairs bedroom, Appellant stabbed Cox with the knife and then used the knife to cut Cox's face. Appellant then ran from the home and was found passed out on the steps of an abandoned apartment building a few blocks away from *Page 3 
Cox's home. Appellant had a head wound and was taken to the hospital. At trial, Appellant denied using a knife and recalled being hit with the night stick. Appellant stated that during the fight in the kitchen, Appellant pushed Cox into a pile of storm windows lined up against the kitchen wall, causing there to be broken glass all over the floor.
 {¶ 6} After being injured, Cox came downstairs and into the kitchen. Coram, who returned to the home after leaving to call 911, found Cox in the kitchen. Coram attempted to slow Cox's bleeding with towels.
 {¶ 7} Canton Police patrolman Bobby Cutts, Jr. responded to the call of a possible stabbing at 11th and Fulton N.W. Officer Cutts and Officer Sharp found Cox and Coram in the kitchen. Officer Cutts testified that he observed that Cox had severe multiple lacerations to his face and jaw area, and had a severe injury to his abdomen. Officer Cutts asked Cox what happened and Cox replied that Will (Appellant) had done this to him.
 {¶ 8} Upon investigation, Officer Cutts testified that he observed blood in the kitchen, living room, up the stairs and into the bedroom area. Detective Ramser of the ID Bureau found the night stick in the upstairs hallway between the bedrooms.
 {¶ 9} On October 23, 2006, Appellant was indicted on one count of Aggravated Burglary, R.C. 2911.11(A)(1) and/or (A)(2), a felony of the first degree; one count of Felonious Assault, R.C. 2903.11(A)(1) and/or (A)(2), a felony of the second degree; and one count of Receiving Stolen Property, R.C. 2913.51(A), a felony of the fifth degree.
 {¶ 10} The trial court granted Appellant's motion to have a separate trial on the charge of Receiving Stolen Property. Appellant's trial on the charges of Aggravated *Page 4 
Burglary and Felonious Assault began on December 5, 2006. The jury found Appellant not guilty of the charge of Aggravated Burglary but guilty of Felonious Assault. After the trial, Appellant pleaded guilty to the charge of Receiving Stolen Property.
 {¶ 11} At the sentencing hearing, the trial court sentenced Appellant to seven years in prison.
 {¶ 12} Appellant now appeals and raises four Assignments of Error:
 {¶ 13} "I. THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL WHEN THE JURY WAS INFORMED THAT THE APPELLANT WAS IN CUSTODY."
 {¶ 14} "II. THE TRIAL COURT ERRED IN IMPAIRING APPELLANT'S RIGHT TO CROSS EXAMINE WITNESSES."
 {¶ 15} "III. THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL BECAUSE OF PROSECUTORIAL MISCONDUCT."
 {¶ 16} "IV. THE JURY'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 I. {¶ 17} Appellant first argues that he was denied his right to a fair trial when the prosecutor asked Cox to identify Appellant at trial and elicited the following testimony:
 {¶ 18} "Q: Would you please point to him and describe what he's wearing?"
 {¶ 19} "A: He's wearing a tan and green colored shirt, pair of pants and pair of jail shoes. Sorry." (Tr. I, p. 176).
 {¶ 20} Counsel for Appellant asked to approach and requested the trial court give a cautionary instruction to the jury, or in the alternative, declare a mistrial. (Tr. I, p. *Page 5 
177). Counsel argued the witness identified Appellant as wearing "jail shoes" on purpose with the intent to deprive Appellant from having a fair trial. Id. The trial court denied Appellant's motion for a mistrial and gave a cautionary instruction to the jury, over the prosecutor's objection. (Tr. I, p. 178). The trial court stated:
 {¶ 21} "THE COURT: Ladies and gentlemen of the Jury, you are instructed that whether or not the Defendant, Mr. Freeman, is wearing attire that has been described by this witness is not an indication of whether he has been or is currently incarcerated, and the Jury is reminded that the Defendant is presumed innocent until his guilt is proved beyond a reasonable doubt." (Tr. I, p. 179).
 {¶ 22} Appellant likens the witness's remark about Appellant's "jail shoes" to cases which hold that, "[a] criminal defendant is generally entitled to appear in court without shackles, as the presumption of innocence may be undermined when the defendant is presented in restraints." State v. Garrett, 5th Dist. No. 03-CA-49,2004-Ohio-2231, at ¶ 37 citing Zygadlo v. Wainwright (C.A.11, 1983), * 232 720 F.2d 1221, certiorari denied (1984), 466 U.S. 941,104 S.Ct. 1921, 80 L.Ed.2d 468; Gilmore v. Armontrout (C.A.8, 1989),861 F.2d 1061, certiorari denied (1989), 490 U.S. 1114, 109 S.Ct. 3176,104 L.Ed.2d 1037; State v. Carter (1977), 53 Ohio App.2d 125, 7 O.O.3d 90,372 N.E.2d 622.
 {¶ 23} The same has been held in regards to the defendant's appearance at trial in jail clothing. In Estelle v. Williams, the United States Supreme Court stated that a juror's judgment might be affected by a defendant's appearance in prison clothing. (1976), 425 U.S. 501,96 S.Ct. 1691, 48 L.Ed.2d 126. "Being compelled to wear prison or jail clothing, like being restrained, erodes the presumption of innocence."State v. *Page 6 Evans, 4th Dist. No. 05CA3002, 2004-Ohio-2564, at ¶ 41
citing State v. Hecker (July 15, 1994), 4th Dist. No. 93CA10; see also State v. Watters, 8th Dist. No. 82451,2004-Ohio-2405. In order to determine whether a conviction must be overturned because an accused wore jail clothing at trial, the relevant inquiry is whether the accused's appearance in jail clothing was compelled. State v. Garrett, 5th Dist. No. 03-CA-49,2004-Ohio-2231, at ¶ 12 citing State v. Dorsey (Apr. 23, 1998), 8th Dist. No. 72177.
 {¶ 24} In his Assignment of Error, Appellant does not argue that he was compelled to appear at trial wearing shoes issued by the prison. Upon a review of the record, there is no evidence that Appellant was compelled to stand trial before the jury in prison-issue shoes. Appellant argues that he was prejudiced by the witness's statement on direct examination that Appellant was wearing "jail shoes."
 {¶ 25} Assuming arguendo the wearing of prison-issue shoes rose to the level of an Estelle violation, we find the error to be harmless and must be disregarded under Crim.R. 52(A), which reads:
 {¶ 26} "Harmless error. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."
 {¶ 27} The claimed error, under Estelle, supra, is of federal constitutional magnitude. State v. Hecker, supra. Thus, we must apply the federal test of harmless error, which is stated in Chapman v.California (1967), 386 U.S. 18. Chapman requires that "* * * before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. * * * " Chapman, supra, at 24. Therefore, applying the Chapman test, we must examine the *Page 7 
entire record to determine whether it appears reasonably possible that the error might have materially influenced the jury in arriving at its verdict.
 {¶ 28} Applying the above standard, we hold that the fact that Appellant appeared before the jury in prison-issue shoes did not materially influence the jury's verdict. We find the verdict would have been returned irrespective of Appellant's physical appearance at trial. Thus, any error was harmless beyond a reasonable doubt.
 {¶ 29} Finally, we note the trial court instructed the jury that the attire described by the witness did not indicate whether Appellant was currently incarcerated and that the jury must presume Appellant innocent until his guilt is proved beyond a reasonable doubt. It must be presumed that the jury followed this instruction. Pang v. Minch (1990),53 Ohio St.3d 186, paragraph four of the syllabus.
 {¶ 30} Accordingly, Appellant's first Assignment of Error is overruled.
 II. {¶ 31} In his second Assignment of Error, Appellant argues the trial court abused its discretion when he was not allowed to question the victim about his use of cocaine on the night he was assaulted by Appellant. Appellant states it was a violation of his Sixth Amendment right to confront a witness against him. We disagree.
 {¶ 32} During cross-examination, defense counsel asked Cox whether he was drinking and smoking crack the night of the incident. (Tr. I, p. 216). Cox's medical records demonstrated a detectable level of cocaine in his system after spending five days in the hospital. (Tr. I, p. 218). The trial court sustained the prosecution's objection to the introduction of Cox's cocaine usage because Appellant did not provide expert testimony to demonstrate that it impaired his ability to recall events. (Tr. 1, p. 219). *Page 8 
 {¶ 33} Appellant argues this line of questioning was relevant because it would have provided the possible motive for the victim to be the aggressor and it would have determined the ability of the witness to recall the events of September 9, 2006 accurately.
 {¶ 34} A trial court's admission of evidence is reviewed for abuse of discretion. State v. Ahmed, 103 Ohio St.3d 27, 813 N.E.2d 637,2004-Ohio-4190, at ¶ 79. An abuse of discretion is more than an error of law or judgment, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 35} Appellant first argues the evidence of Cox's cocaine usage was relevant to demonstrate that Cox was the initial aggressor. Self defense is an affirmative defense, in which the defendant's burden includes proving his state of mind; that is, that he had a bona fide belief that he was in imminent danger of death or great bodily injury. State v.Robbins (1979), 58 Ohio St.2d 74, 80, 388 N.E.2d 755. Under certain circumstances, scientific evidence of the victim's drug use may be relevant to the defendant's state of mind. State v. Baker (1993),88 Ohio App.3d 204, 623 N.E.2d 672. However, admission of such evidence is at the discretion of the trial court based on the circumstances of the case. See State v. Davis, 5th Dist. No. 2003 CA 429, 2004-Ohio-7056, at ¶ 26-28 (excluding evidence of victim's cocaine possession as irrelevant in the context of the particular self defense argument).
 {¶ 36} Upon a review of the record, we find that Appellant did not allege self defense. We find the exclusion of the evidence of Cox's cocaine usage on September 9, 2006 to be irrelevant to the issue of whether Cox was the initial aggressor. *Page 9 
 {¶ 37} Appellant next argues the trial court abused its discretion when it did not allow cross-examination of Cox about his drug use to the extent that it affected his credibility. The Sixth Amendment to the U.S. Constitution and the Ohio Rules of Evidence guarantee the right of a criminal defendant to confront the witnesses against him for the biases they may hold. State v. Miller, 11th Dist. No. 2004-T-0082, 2005-Ohio-5283, ¶ 32. A criminal defendant's right to confront and cross-examine a witness is not unlimited. Delaware v. VanArsdall (1986), 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674. A trial court retains "wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. Thus, "`the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" (Emphasis sic.) Id., quotingDelaware v. Fensterer (1985), 474 U.S. 15, 20, 106 S.Ct. 292,88 L.Ed.2d 15. Furthermore, the "constitutional right to cross-examine adverse witnesses does not authorize defense counsel to disregard sound evidentiary rules." State v. Amburgey (1987), 33 Ohio St.3d 115, 117,515 N.E.2d 925. While cross-examination itself is a matter of right, the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. State v.Green (1993), 66 Ohio St.3d 141, 147, 609 N.E.2d 1253, citing Alford v.United States (1931), 282 U.S. 687, 691, 51 S.Ct. 218, 75 L.Ed. 624.
 {¶ 38} The cross-examination of a witness as to drug use to the extent that it tended to affect the credibility of the witness to observe matters about which he testifies *Page 10 
is relevant on the issue of credibility. Johnson v. Knipp (1973),36 Ohio App.2d 218, 223, 304 N.E.2d 914.
 {¶ 39} Ohio courts have recognized that "harmless error" analysis applies to a claim of confrontation right violations. State v.Willis, 5th Dist. No. 05CA42, 2005-Ohio-6947, at ¶ 15
citing State v. Davis, Cuyahoga App. No. 85477, 2005-Ohio-5544, ¶ 29, citing Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L .Ed.2d 674. Chapman, supra, requires that " * * * before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. * * * "Chapman, supra, at 24.
 {¶ 40} Applying the above standard, we find even if the trial erred when it did not permit defense counsel to cross-examine Cox about his cocaine usage on September 9, 2006, we conclude the alleged error was harmless given the overwhelming evidence of appellant's guilt. Three other witnesses testified they saw Appellant grab the knife off the kitchen counter and chase Cox up the stairs. (Tr. I, p. 234; Tr. II, p. 284; Tr. II, p. 307). Officer Cutts testified that he saw blood "coming from the kitchen into the living room area, and also there was blood going up the stairs to the bedroom area." (Tr. II, p. 314). Officer Cutts asked Cox what had happened as Cox lay on the kitchen floor waiting for medical help and Cox "stated that Will had did this to him." (Tr. II, p. 312).
 {¶ 41} Accordingly, Appellant's second Assignment of Error is overruled.
 III. {¶ 42} Appellant next argues he was denied the right to a fair trial due to prosecutorial misconduct during the prosecution's closing argument. We disagree.
 {¶ 43} During his closing argument, the prosecutor stated: *Page 11 
 {¶ 44} "Defendant testified that he kicked the victim into a window and it broke. Look at the photographs. You heard the testimony, a three-foot window. Look at the amount of glass. Look where the glass is located. Look at these exhibits and tell me if that glass did not come from the window and the door that was broken. The shards are still in the window.
 {¶ 45} "He testified that he was found by his friend, Brandon. We didn't hear from Brandon, did we? He didn't come in and say anything." (Tr. II, p. 415).
 {¶ 46} Defense counsel objected. The trial court overruled the objection and stated,
 {¶ 47} "However, the Jury is reminded that statements by counsel are not evidence." (Tr. II, p. 415).
 {¶ 48} On review for a claim of prosecutorial misconduct, we must determine whether the prosecutor's alleged misconduct was so egregious, the defendant was denied his fundamental right to a fair trial.State v. Iocona (2001), 93 Ohio St.3d 83.
 {¶ 49} A prosecutor is entitled to a certain degree of latitude in closing arguments. State v. Liberatore (1982), 69 Ohio St.2d 583, 589,433 N.E.2d 561. The test regarding prosecutorial misconduct in closing arguments is whether the remarks are improper and, if so, whether they prejudicially affected the substantive rights of the accused. State v.Moore (1998), 81 Ohio St.3d 22. A trial will not be deemed unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt the jury would have found the defendant guilty even without the improper comments. State v. Tenace (2006), 109 Ohio St.3d 255. The touchstone is the fairness of the trial, not the culpability of the prosecutor. Id. *Page 12 
 {¶ 50} The state may comment upon a defendant's failure to offer evidence in support of its case. State v. Walker, 5th
Dist. No. 2005CA00286, 2006-Ohio-6240, at ¶ 63, citing State v.Collins (2000), 89 Ohio St.3d 524, 733 N.E.2d 1118. "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of hisFifth Amendment right to remain silent." Id. at 528-29, 733 N.E.2d 1118. The state must refrain from commenting on a decision not to testify, but the state may challenge the weight of evidence offered by the defense in support of its theory of the case. Id. The state does not have a duty to disprove every possible circumstance suggested by the defendant. Id.
 {¶ 51} "[T]he fact that one of the parties fails to call a witness who has some knowledge of the matter under investigation may be commented upon." State v. Petro (1948), 148 Ohio St. 473, 498, 162, 76 N.E.2d 355,367; State v. Champion (1924), 109 Ohio St. 281, 289-290, 142 N.E. 141,143-144; State v.D'Ambrosio (1993), 67 Ohio St.3d 185, 193,1993-Ohio-170, 616 N.E.2d 909,916. The comment that a witness other than the accused did not testify is not improper, State v. D'Ambrosio (1993),67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916, since the prosecution may comment upon the failure of the defense to offer evidence in support of its case. State v. Williams (1986), 23 Ohio St.3d 16, 19-20, 23 OBR 13,16-17, 490 N.E.2d 906, 910-911; State v. Bies (1996), 74 Ohio St.3d 320,326, 658 N.E.2d 754, 760." Clemons, supra, 82 Ohio St.3d 438, 452,1998-Ohio-452, 692 N.E.2d 1009, 1022.
 {¶ 52} Based upon the forgoing, we find that the prosecutor did not engage in prosecutorial misconduct during his closing argument when he commented that *Page 13 
Appellant did not call his friend to testify as to the injuries that Appellant suffered that night. Moreover, the trial court instructed the jury that it must decide the case on the evidence and that statements by counsel during closing argument are not evidence. We presume that the jury followed the court's instructions. State v. Loza (1994),71 Ohio St.3d 61, 79, 641 N.E.2d 1082.
 {¶ 53} Appellant's third Assignment of Error is overruled.
 IV. {¶ 54} Appellant argues in his fourth Assignment of Error that the jury verdict of guilty on the charge of felonious assault was against the manifest weight of the evidence and not supported by sufficient evidence.
 {¶ 55} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held:
 {¶ 56} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 57} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact *Page 14 
clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, citing State v.Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 58} R.C. 2903.11(A) provides a definition of felonious assault: "(A) No person shall knowingly do either of the following: * * * (1) Cause serious physical harm to another or to another's unborn; * * *"
 {¶ 59} Appellant attacks the jury's finding of guilt based on the inconsistencies in the eyewitnesses' stories. In reviewing the entire record, we find several consistencies in the witnesses' testimony which are sufficient to support the crime for which Appellant was convicted. As stated above, Cox, Coram, Tornero and Sells testified they saw Appellant grab a knife off the kitchen counter and chase Cox up the stairs. (Tr. I, p. 234; Tr. II, p. 284; Tr. II, p. 307). Officer Cutts testified that he saw blood "coming from the kitchen into the living room area, and also there was blood going up the stairs to the bedroom area." (Tr. II, p. 314). Officer Cutts asked Cox what had happened as Cox lay on the kitchen floor waiting for medical help and Cox "stated that Will had did this to him." (Tr. II, p. 312).
 {¶ 60} Cox's medical records were submitted as exhibits. At trial, Cox testified that he suffered from a punctured spleen, stomach and diaphragm. (Tr. I, p. 198). His *Page 15 
lung collapsed. Id. He also suffered a laceration on his face that required stitches and left a scar. (Tr. I, p. 199).
 {¶ 61} Based on our review of the record, we find that, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that Appellant knowingly caused serious physical harm to Cox. We further find that the jury, in convicting Appellant, did not lose its way so as to create a manifest miscarriage of justice.
 {¶ 62} Appellant's fourth Assignment of Error is overruled.
 {¶ 63} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
 Delaney, J. Gwin, P.J. and Hoffman, J. concur. *Page 16 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant. *Page 1