[Cite as *State v. Small* , 2011-Ohio-4086.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
|     Plaintiff-Appellee | Hon. Sheila G. Farmer, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 10CAA110088 |
| DEJUAN L. SMALL | |
|     Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Delaware County Court of
Common Pleas, Case No. 10CRI040203

JUDGMENT:          Affirmed in part; reversed in part; and
remanded

DATE OF JUDGMENT ENTRY:          August 16, 2011

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

CAROL HAMILTON O'BRIEN          WILLIAM T. CRAMER
Delaware County Prosecuting Attorney     470 Olde Worthington Road, Suite 200
                                          Westerville, Ohio 43082
DOUGLAS DUMOLT
Assistant Prosecuting Attorney
140 N. Sandusky St., 3rd Floor
Delaware, Ohio 43015

*Hoffman, P.J.*

{¶1} Defendant-appellant DeJuan Small appeals his conviction and sentence entered by Delaware County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} In November of 2008, Kamal Shehata was involved in a relationship with Jessica Beasley. At the time, Shehata was married with children. When Shehata's wife learned of the relationship, she and the children moved out of the marital home. Beasley did not know Shehata was married during the relationship, and was upset with him for the deception.

{¶3} On November 24, 2008, Shehata contacted Beasley, whom he knew as "Juju," asking her if she wanted to "hang out" at his home explaining his wife had moved out. Around 9:00 p.m. that evening, Shehata picked up Beasley to take her back to his house. During the drive, Beasley was texting and talking on the phone a lot. Beasley then asked Shehata to stop at a CVS store for her to use the restroom. Shehata explained they were close to his house if she wanted to wait, but Beasley insisted they stop at the CVS store. Shehata observed Beasley using the telephone while inside the CVS store.

{¶4} At the Shehata residence, Shehata cooked dinner and he and Beasley smoked marijuana. After dinner, they went upstairs to his bedroom. A short time later, Shehata heard a loud explosion downstairs, near the front door. He and Beasley stepped to the bedroom door and saw four men running into the bedroom. All four men had masks on their faces. The men asked about guns and money. The men then

proceeded to take Shehata and Beasley to the bathroom and tie them up. Shehata's hands and feet were bound with zip ties, and his hands were tied to the shower door. During the incident, one of the men said to Shehata, "You fuck with my family."

{¶5} The men stole a gun, televisions, computers, cameras and approximately $12,000 in cash from Shehata during the incident. They also took his cell phone and house phone.

{¶6} Shehata telephoned the police, but Beasley told him she did not want to be involved with the police because there was a warrant for her arrest. Shehata called a cab for her. When interviewed by the police, Beasley initially gave them a false name. A detective later examined Beasley's cell phone which contained messages giving someone directions to Shehata's house. When confronted with the messages, Beasley confessed she was involved with the robbery.

{¶7} A subpoena of Beasley's cell phone records led detectives to Appellant. In exchange for her testimony against Appellant, Beasley entered a plea of guilty to a lesser included offense of kidnapping, and she was sentenced to four years in prison.

{¶8} When questioned by the investigating officers, Appellant claimed to have lost his cell phone, which was actually owned by his stepfather, but admitted to communicating with Beasley on the night in question.

{¶9} At trial herein, Beasley testified she was angry with Shehata after learning of his marriage during their relationship. She testified Appellant's number was stored in her phone as "nunu", and on the night in question she texted him back and forth to make sure he was following her to Shehata's residence in order to facilitate a robbery.

At one point, Appellant lost them, and she had Shehata stop at the CVS store in order to call Appellant.

{¶10} Appellant was indicted on two counts of aggravated burglary, involving threats of physical harm and a deadly weapon, in violation of R.C. 2911.11(A)(1)(2); one count of aggravated robbery with a deadly weapon, in violation of R.C. 2911.01(A)(1); three counts of kidnapping to facilitate a felony and terrorize a victim, and creating a substantial risk of serious physical harm, in violation of R.C. 2905.01(A)(2)(3) and (B)(2); and a firearm specification. Following a jury trial, Appellant was found guilty on all charges.

{¶11} At sentencing, the trial court merged the sentences on the aggravated burglary and aggravated robbery counts. The court then sentenced Appellant to nine years on the first count of aggravated burglary and a concurrent term of six years on the first count of kidnapping. The court also imposed a consecutive three year term for the firearm specification, a five year term of post-release control and ordered Appellant pay $13,000 in restitution.

{¶12} Appellant now appeals, assigning as error:

{¶13} "I. DEFENDANT'S STATE AND FEDERAL DUE PROCESS RIGHTS TO THE PRESUMPTION OF INNOCENCE WERE VIOLATED WHEN ONE OF THE STATE'S WITNESSES TESTIFIED THAT DEFENDANT HAD TO BE TRANSPORTED TO JAIL IN A POLICE CRUISER DURING TRIAL.

{¶14} "II. DEFENDANT'S STATE AND FEDERAL RIGHTS TO DUE PROCESS WERE VIOLATED WHEN THE TRIAL COURT DISAPPROVED TRANSITIONAL CONTROL UNDER R.C. 2967.26 AT SENTENCING.

**{¶15}** "III. DEFENDANT'S STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS AND PROTECTION FROM DOUBLE JEOPARDY WERE VIOLATED WHEN THE TRIAL COURT IMPOSED SENTENCE ON THE ALLIED OFFENSES OF AGGRAVATED BURGLARY AND KIDNAPPING IN VIOLATION OF R.C. 2941.25."

I

**{¶16}** In the first assignment of error, Appellant argues his due process rights were violated when Shehata testified to Appellant being transported to trial in a police cruiser.

**{¶17}** During the trial of this matter, Shehata failed to comply with a subpoena to testify; therefore, he was kept in jail overnight to ensure his presence to testify the following day. During his testimony, Shehata stated:

**{¶18}** "Q. Do you see an individual seated at the defense table to my left?

**{¶19}** "A. I can't tell, sir. I don't know.

**{¶20}** "Q. Right. You can't tell if that was the person who was there that evening; right?

**{¶21}** "A. Yes.

**{¶22}** "Q. Has that man said anything to you about this case since this has started?

**{¶23}** "A. Yesterday - -

**{¶24}** "Mr. Boger: Objection, Your Honor.

**{¶25}** "The Witness: Yesterday - -

**{¶26}** "The Court: I'll overrule.

**{¶27}** "By Mr. Dumolt:

**{¶28}** "Q. Okay. You can go ahead and answer, if he said anything to you about - -

**{¶29}** "A. Yesterday, I was leaving the courthouse with my handcuffs, you know, he was leaving at the same time. He was threatening me downstairs, 'Don't talk'. He was like, 'Don't talk.' The cops was with me. And he was trying to tell me, don't talk, with the face, you know, the threatening face.

**{¶30}** "Q. But to the best of your knowledge before yesterday, you had never seen that man?

**{¶31}** "A. No, sir."

**{¶32}** Tr. at 201-202.

**{¶33}** On cross-examination, Shehata testified:

**{¶34}** "A. He was like 'Don't talk' and he was looking at me like this. I told the cops - -

**{¶35}** "Q. So you were in the car?

**{¶36}** "A. Yes.

**{¶37}** "Q. You couldn't hear words?

**{¶38}** "A. Yeah, but you can read lips.

**{¶39}** "Q. You could see his mouth moving?

**{¶40}** "A. Yes, and you could see his face, his eyes, looking at you, trying to tell you, 'Don't talk'.

**{¶41}** "Q. How far away were you, a cruiser?

**{¶42}** "A. The cruiser, he was in that cruiser and I was in the cruiser next to him."

**{¶43}** Tr. at 202-203.

**{¶44}** Appellant's counsel moved for a mistrial as a result of the statement, and the trial court denied the same.  The following exchange occurred on the record,

**{¶45}** "The Court: Well, first of all, your client is sitting there; he's got a deputy sitting behind him and the other deputy is in the courtroom.  I mean anybody would have to be stupid not to know that's he's not under custody.  He is in civilian clothes.  Okay.  It was your client who, apparently, made the statement.  So anything that comes out, he's brought upon himself.  So, I'll strike the portion of his answer regarding the cruiser and deny your motion for mistrial.

**{¶46}** (End of side-bar.)

**{¶47}** "The Court: All right, folks, please disregard any part of the answer that mentioned, cruiser.  Go ahead, Mr. Boger."

**{¶48}** Tr. at 204.

**{¶49}** In *State v. Freeman,* Stark App. No. 2006CA00388, *2007*-Ohio-6270, this Court held,

**{¶50}** "Appellant likens the witness's remark about Appellant's 'jail shoes' to cases which hold that, '[a] criminal defendant is generally entitled to appear in court without shackles, as the presumption of innocence may be undermined when the defendant is presented in restraints.' *State v. Garrett,* 5th Dist. No. 03-CA-49, 2004-Ohio-2231, at ¶ 37 citing *Zygadlo v. Wainwright* (C.A.11, 1983), 720 F.2d 1221, certiorari denied (1984), 466 U.S. 941, 104 S.Ct. 1921, 80 L.Ed.2d 468; *Gilmore v. Armontrout* (C .A.8, 1989), 861 F.2d 1061, certiorari denied (1989), 490 U.S. 1114, 109

S.Ct. 3176, 104 L.Ed.2d 1037; *State v. Carter (1977),* 53 Ohio App.2d 125, 7 O.O.3d 90, 372 N.E.2d 622.

**{¶51}** "The same has been held in regards to the defendant's appearance at trial in jail clothing. In *Estelle v. Williams,* the United States Supreme Court stated that a juror's judgment might be affected by a defendant's appearance in prison clothing. (1976), 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126. 'Being compelled to wear prison or jail clothing, like being restrained, erodes the presumption of innocence.' *State v. Evans,* 4th Dist. No. 05CA3002, 2004-Ohio-2564, at ¶ 41 citing *State v. Hecker* (July 15, 1994), 4th Dist. No. 93CA10; see also *State v. Watters,* 8th Dist. No. 82451, 2004-Ohio-2405. In order to determine whether a conviction must be overturned because an accused wore jail clothing at trial, the relevant inquiry is whether the accused's appearance in jail clothing was compelled. *State v. Garrett,* 5th Dist. No. 03-CA-49, 2004-Ohio-2231, at ¶ 12 citing *State v. Dorsey* (Apr. 23, 1998), 8th Dist. No. 72177.

**{¶52}** "In his Assignment of Error, Appellant does not argue that he was compelled to appear at trial wearing shoes issued by the prison. Upon a review of the record, there is no evidence that Appellant was compelled to stand trial before the jury in prison-issue shoes. Appellant argues that he was prejudiced by the witness's statement on direct examination that Appellant was wearing 'jail shoes.'

**{¶53}** "Assuming arguendo the wearing of prison-issue shoes rose to the level of an *Estelle* violation, we find the error to be harmless and must be disregarded under Crim.R. 52(A), which reads:

**{¶54}** " 'Harmless error. Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.'

**{¶55}** "The claimed error, under *Estelle,* supra, is of federal constitutional magnitude. *State v. Hecker,* supra. Thus, we must apply the federal test of harmless error, which is stated in *Chapman v. California* (1967), 386 U.S. 18. *Chapman* requires that ' * * * before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. * * * '*Chapman,* supra, at 24. Therefore, applying the *Chapman* test, we must examine the entire record to determine whether it appears reasonably possible that the error might have materially influenced the jury in arriving at its verdict.

**{¶56}** "Applying the above standard, we hold that the fact that Appellant appeared before the jury in prison-issue shoes did not materially influence the jury's verdict. We find the verdict would have been returned irrespective of Appellant's physical appearance at trial. Thus, any error was harmless beyond a reasonable doubt.

**{¶57}** "Finally, we note the trial court instructed the jury that the attire described by the witness did not indicate whether Appellant was currently incarcerated and that the jury must presume Appellant innocent until his guilt is proved beyond a reasonable doubt. It must be presumed that the jury followed this instruction. *Pang v. Minch* (1990), 53 Ohio St.3d 186, paragraph four of the syllabus."

**{¶58}** It is well settled when jurors see a defendant in custody, there is no need for a new trial when the encounter was "brief, inadvertent, and outside the courtroom." *State v. Jaloweic* (2001), 91 Ohio St.3d 220; *State v. Linkous,* Licking App. No. 08CA51, 2009-Ohio-1896.

**{¶59}** While we do not find the testimony relative to Appellant's transportation in a cruiser equivalent to appearing at trial in prison attire, we will nonetheless address

Appellant's argument assuming, arguendo, the testimony rose to the level of an *Estelle* violation. We must presume the jury followed the trial court's instruction, and upon review of the record we find any error would be harmless beyond a reasonable doubt. There is substantial evidence upon which the jury based its verdict, including the testimony of Jessica Beasley and the cell phone records linking Appellant to the incident. Shehata's brief and inadvertent reference to Appellant's transportation in a cruiser did not prejudice Appellant beyond a reasonable doubt.

{¶60} The first assignment of error is overruled.

II.

{¶61} In the second assignment of error Appellant argues the trial court erred in including as part of Appellant's sentencing a provision not to consider transitional control.

{¶62} R.C. 2967.26 allows for the creation of a transitional control program for those nearing the end of their prison sentence. The statute reads, in pertinent part,

{¶63} "(2) At least three weeks prior to transferring to transitional control under this section a prisoner who is serving a term of imprisonment or prison term for an offense committed on or after July 1, 1996, the adult parole authority shall give notice of the pendency of the transfer to transitional control to the court of common pleas of the county in which the indictment against the prisoner was found and of the fact that the court may disapprove the transfer of the prisoner to transitional control and shall include a report prepared by the head of the state correctional institution in which the prisoner is confined. The head of the state correctional institution in which the prisoner is confined, upon the request of the adult parole authority, shall provide to the authority for inclusion

in the notice sent to the court under this division a report on the prisoner's conduct in the institution and in any institution from which the prisoner may have been transferred. The report shall cover the prisoner's participation in school, vocational training, work, treatment, and other rehabilitative activities and any disciplinary action taken against the prisoner. If the court disapproves of the transfer of the prisoner to transitional control, the court shall notify the authority of the disapproval within thirty days after receipt of the notice. If the court timely disapproves the transfer of the prisoner to transitional control, the authority shall not proceed with the transfer. If the court does not timely disapprove the transfer of the prisoner to transitional control, the authority may transfer the prisoner to transitional control."

{¶64} This Court recently addressed the issue raised herein in *State v. Spears*, Licking App. No. 10 CA 95, 2011-Ohio-1538, holding:

{¶65} "While the statute does not specifically prohibit the court from denying the transitional control prior to notice, we find to do so clearly thwarts the design and purpose of the statute. The statute is designed to promote prisoner rehabilitation effort and good behavior while incarcerated. To prematurely deny the possibility of transitional control runs contra to those purposes. While the trial court retains discretion to disapprove the transitional control, we find to do so in the sentencing entry prior to notice from the adult parole authority is premature."

{¶66} Based upon the rationale set forth in *Spears,* supra, Appellant's second assignment of error is sustained.

III.

{¶67} In the third assignment of error, Appellant argues the trial court erred in imposing sentence on the allied offenses of aggravated burglary and kidnapping, in violation of R.C. 2941.25.

{¶68} R.C. 2941.25 states as follows: "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶69} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

{¶70} Recently, the Ohio Supreme Court, in *State v. Johnson,* 128 Ohio St.3d 1405, 2010–Ohio–6314, modified the test for determining whether offenses are allied offenses of similar import. In *Johnson,* the Ohio Supreme Court directed us to look at the elements of the offenses in question and determine whether or not it is possible to commit one offense and commit the other with the same conduct. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. If, however, the court determines that commission of one offense will never result in the commission

of the other, or if there is a separate animus for each offense, then the offenses will not merge according to *Johnson,* supra.

{¶71} Appellant was convicted of aggravated burglary, in violation of R.C. 2911.11(A)(1)(2), which reads:

{¶72} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

{¶73} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

{¶74} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

{¶75} Appellant was further convicted of kidnapping, in violation of R.C. 2905.01, which reads:

{¶76} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

{¶77} "(1) To hold for ransom, or as a shield or hostage;

{¶78} "(2) To facilitate the commission of any felony or flight thereafter;

**{¶79}** "(3) To terrorize, or to inflict serious physical harm on the victim or another;

**{¶80}** "(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will;

**{¶81}** "(5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority;

**{¶82}** "(6) To hold in a condition of involuntary servitude.

**{¶83}** "(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:

**{¶84}** "(1) Remove another from the place where the other person is found;

**{¶85}** "(2) Restrain another of the other person's liberty."

**{¶86}** In *State v. Sidibeh*, 192 Ohio App.3d 256, 2011-Ohio-712, the Tenth District Court of Appeals recently addressed the issue of whether kidnapping was an allied offense of aggravated robbery under *Johnson*, where the kidnapping was incidental to the aggravated robbery, holding:

**{¶87}** "In *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 44, the Supreme Court of Ohio recently overruled *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, which held that R.C. 2941.25 called for an abstract analysis of multiple offenses. The court in *Johnson* concluded that the statute 'instructs

courts to examine a defendant's conduct—an inherently subjective determination.' Id. at ¶ 52. Pursuant to *Johnson,* '[i]f the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' ' Id. at ¶ 49, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., concurring in judgment only). 'If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.' *Johnson* at ¶ 50. 'Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.' (Emphasis sic.) Id. at ¶ 51.

{¶88} "Appellee argues that under a subjective analysis, the kidnapping and aggravated-robbery offenses pertaining to Raheem and Paris do not merge. It relies on *State v. Logan* (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, syllabus, a case predating *Rance* and applying a subjective review to the merger issue. In *Logan,* the court held that when a kidnapping is merely incidental to another underlying crime, there exists no separate animus sufficient to sustain separate convictions. Id. On the other hand, when the kidnapping 'subjects the victim to a substantial increase in risk of harm separate and apart from' the other underlying crime, a separate animus exists for each offense sufficient to support separate convictions. Id. Likewise, when, in a kidnapping, 'the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there

exists a separate animus as to each offense sufficient to support separate convictions.' Id.

**{¶89}** "Relying on *Logan,* appellee argues that merger does not apply to the kidnapping and aggravated-robbery offenses pertaining to Raheem and Paris because appellant forced them into prolonged restraint, moved them to a common area of the home, and threatened to harm them if they did not cooperate. The restraint, however, lasted no longer than the time it took for the commission of the aggravated robbery. Nor was appellant's movement of the victims to a common area of the home 'substantial so as to demonstrate significance independent of' the aggravated robbery. See *Logan* at syllabus. See also *State v. Williams,* 10th Dist. No. 02AP–35, 2002-Ohio-4503, 2002 WL 2005815, ¶ 76–77 (concluding that a defendant's kidnapping offense was incidental to, and merged with, an underlying offense when the defendant took the victim from the bathroom to the living room before committing the underlying offense). The threat appellant made to Raheem and Paris also occurred to facilitate the aggravated robbery and did not escalate in a manner that substantially increased the risk of harm to those victims separate and apart from the aggravated robbery.

**{¶90}** "Therefore, analyzing appellant's conduct under *Logan* establishes that the kidnapping of Raheem and Paris was incidental to the aggravated robbery. In fact, the court in *Johnson* has indicated that 'the commission of an aggravated robbery * * * would also constitute a kidnapping' when, as here, ' 'a weapon that has been shown * * * during the commission of a theft offense * * * forcibly restrain[ed] the liberty of another.' ' Id. at ¶ 52, quoting *State v. Winn,* 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154, ¶ 21.

**{¶91}** "In the final analysis, the kidnapping against Raheem and Paris was merely incidental to, and stemmed from the same conduct as, the aggravated robbery. Consequently, the trial court committed plain error by failing to merge (1) the kidnapping offense pertaining to Paris with the aggravated robbery offense pertaining to that victim and (2) the kidnapping offense pertaining to Raheem with the aggravated robbery offense pertaining to that victim. Thus, we sustain appellant's seventh assignment of error."

**{¶92}** In *State v. Logan* (1979), 60 Ohio St.2d 126, the Supreme Court set forth the following factors to consider when considering whether kidnapping is an allied offense of another charge,

**{¶93}** "The primary issue, however, is whether the restraint or movement of the victim is merely incidental to a separate underlying crime or, instead, whether it has a significance independent of the other offense. In the instant case, the restraint and movement of the victim had no significance apart from facilitating the rape. The detention was brief, the movement was slight, and the victim was released immediately following the commission of the rape. In such circumstances, we cannot say that appellant had a separate animus to commit kidnapping.

**{¶94}** "We adopt the standard which would require an answer to the further question of whether the victim, by such limited asportation or restraint, was subjected to a substantial increase in the risk of harm separate from that involved in the underlying crime. If such increased risk of harm is found, then the separate offense of kidnapping could well be found. For example, prolonged restraint in a bank vault to facilitate

commission of a robbery could constitute kidnapping. In that case, the victim would be placed in substantial danger."

{¶95} Following the rationale of *Sidibeh* and *Logan* set forth above; we find Appellant's commission of the kidnapping was merely incidental to the aggravated burglary. Appellant took Shehata and Beasley to the other room and tied them up in order to commit the aggravated burglary. The kidnapping was part and parcel of the commission of the aggravated burglary and, like *Sidibeh* and *Logan*, the restraint and movement had no significance apart from facilitating the commission of the aggravated burglary. We find the restraint did not subject the victims to a substantial increase in the risk of harm separate from that involved in the underlying crime. Accordingly, we find it was plain error not to find the offenses to be allied offenses of similar import.

{¶96} The judgment of the Delaware County Court of Common Pleas is affirmed in part; reversed in part; and the case is remanded for further proceedings to resentence Appellant in accordance with the law and this Opinion.

By: Hoffman, P.J.

Farmer, J. and

Delaney, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER


s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                 :

          :

    Plaintiff-Appellee       :

          :

-vs-                   :          JUDGMENT ENTRY

          :

DEJUAN L. SMALL        :

          :

    Defendant-Appellant   :          Case No. 10CAA110088

For the reasons stated in our accompanying Opinion, the judgment of the

Delaware County Court of Common Pleas is affirmed in part; reversed in part; and the

case is remanded for further proceedings in accordance with the law and our Opinion.

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN

s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER

s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY